## STATE v. RICHARD ROBERT MITCHELL.

130 N. W. (2d) 128.

June 5, 1964—No. 38,088.

*John S. Connolly,* for appellant.

*Walter F. Mondale,* Attorney General, *Charles E. Houston,* Solicitor General, *William B. Randall,* County Attorney, and *Thomas M. Quayle,* Assistant County Attorney, for respondent.

MURPHY, JUSTICE.

This is an appeal from an order denying defendant's motion for a new trial following his conviction of murder in the third degree. Defendant, together with one Jacob Joseph Smith and Richard Thomas McCarty, was charged by indictment with murder in the third degree contrary to Minn. St. 1961, § 619.10. The indictment alleged that the act took place on August 12, 1959, and that the victim, Gordon Knopic, died August 16, the result of an assault upon him in an attempted robbery.

The material facts as they appear in the record are substantially the same as those stated in State v. Smith, 264 Minn. 307, 119 N. W. (2d) 838, which affirms the conviction of defendant Smith, who was tried separately. In summary, it is sufficient to say that the defendant, Smith, McCarty, and one Lawrence Liebgott, who was indicted as an accessory after the fact, met at Duane's Lounge bar in the evening of August 11, 1959, moved to another bar, and then came to Harry Unise's tavern shortly before 11 p. m. While they were there, one of them observed the victim Knopic cashing a check. About 12:45 a. m., when Knopic left the bar, he was followed by Smith. McCarty also left a few minutes later. Defendant had preceded them. It does not appear that they followed a prearranged plan. As stated in the Smith

case, Knopic went to the parking lot and, after he had entered his automobile, Smith pulled him out and defendant joined in an assault upon him. In describing defendant's participation in the offense, McCarty testified that after Knopic was on the ground, "Mr. Mitchell came running across Rice Street and joined us in the parking lot. * * * He kicked the man [Knopic] in the head * * *. He kicked him like you kick a football." McCarty claims he told Mitchell he "had better leave the fellow alone," that he was "going to kill him." Knopic died in the hospital a few days later.

The state called Lawrence Liebgott as a witness in behalf of the prosecution. He was asked if he knew Smith, McCarty, and the defendant; his own whereabouts and activities on the evening of August 11 and the morning of August 12, 1959; and if he was driving a certain Plymouth automobile on the night of August 11. In response to all of these questions, the witness invoked his privilege under the Fifth Amendment and declined to answer. Defendant claims that when the prosecuting attorney called Liebgott he knew that the witness would claim immunity and that the only purpose of calling him was to discredit defendant with the jury. It is asserted that this was prejudicial error.

The point raised has been considered in a number of cases, three of which have fully discussed the issue. They are DeGesualdo v. People, 147 Colo. 426, 364 P. (2d) 374, 86 A. L. R. (2d) 1435; United States v. Maloney (2 Cir.) 262 F. (2d) 535; and United States v. Hiss (2 Cir.) 185 F. (2d) 822. We agree with the views expressed by the Colorado court in the DeGesualdo case that, where there is an apparent want of good faith on the part of the prosecuting attorney, calling as a witness a coconspirator who did not intend to testify for the prosecution and obtaining from him the claim of privilege against incrimination in the presence of the jury is prejudicial misconduct. While a codefendant or accomplice is a competent witness and may be called to testify, he may not be called for the purpose of extracting a claim of privilege against incrimination. The Colorado court pointed out that the district attorney is a judicial officer sworn to uphold the constitution and is obligated to refrain from invalid con-

duct creating an atmosphere prejudicial to the substantial rights of the defendant.

In United States v. Maloney (2 Cir.) 262 F. (2d) 535, 537, Judge Hand noted that when a witness claims privilege an "inference arises as to what would have been his answer if he had not refused," and that if the prosecution puts the question knowing the privilege will be asserted, "it is charged with notice of the probable effect of his refusal upon the jury's mind." On the other hand, he observed that if the state fails to call the witness, there might be an adverse inference, and the jury might assume that if called the testimony of the witness would have been favorable to the accused. He concluded (262 F. [2d] 537):

"* * * We must confess that the situation is one in which either alternative results in prejudice to one side or the other; and it is impossible, so far as we can see, to lay down any general rule that will cover all instances."

United States v. Hiss, *supra,* involved an indictment charging perjury. The government had notice that a witness had, in a proceeding previous to the trial, refused to answer questions relating to the offense on the ground of self-incrimination and had been prosecuted for contempt. The government knew that he would refuse to answer some of the questions which he would be asked and so did defense counsel, who promptly objected on proper grounds. The witness claimed his privilege and refused to answer questions with reference to the issues, but did testify that he did not know the defendant. The trial judge told the jury not to draw unfavorable inferences because of the fact that the witness claimed immunity. On review it was held that the conduct complained of was not prejudicial. In discussing the issue with which we are here concerned, Judge Chase said (185 F. [2d] 832):

"In some state court decisions language has been used which may support the appellant on this point. In an earlier opinion of this court, after noticing that Professor Wigmore held the view that the privilege was but an option to refuse to answer and not a prohibition of inquiry, 8 Wigmore on Evidence, 3d Ed. § 2268, we remarked by way of warning, 'Nevertheless we are not prepared to say that it would not be

ground for reversal if the party who called a witness connected with a challenged transaction knew, or had reasonable cause to know, before putting the witness on the stand that he would claim his privilege.' We do not now say that such an abuse might not sometime occur so as to require reversal, but we find no such abuse occurred below. Cf. Weinbaum v. United States, 9 Cir., 184 F. 2d 330; dec'd Sept. 19, 1950; People v. Kynette, 15 Cal. 2d 731, 104 P. 2d 794, certiorari denied 312 U. S. 703, 61 S. Ct. 806, 85 L. Ed. 1136. Where a prosecutor is charged with conduct so prejudicial as to amount to reversible error, the charge should be made good by showing a successful effort to influence the jury against a defendant by some means clearly indefensible as a matter of law. It is not enough if there are no more than minor lapses through a long trial. United States v. Socony-Vacuum Oil Co., 310 U. S. 150, 239-240, 60 S. Ct. 811, 84 L. Ed. 1129. Cf. United States v. Buckner, 2 Cir., 108 F. 2d 921, 928, certiorari denied 309 U. S. 669, 60 S. Ct. 613, 84 L. Ed. 1016."

We gather from the authorities which have discussed the principle that where the prosecution calls a witness for the purpose of prejudicing the defendant in the minds of the jury, knowing that the witness will claim immunity, reversible error results. This must be so even though it cannot be established that prejudice results. The objectionable conduct tends to undermine the integrity of the judicial process and vitiates the conviction. However, it cannot be said that prejudice necessarily results in every case. Where the witness is called in good faith, the question arises as to whether, in content and extent, the prosecutor's examination is of a type that has prejudiced defendant to the extent that he has been denied a fair trial. Under such circumstances, it becomes necessary to weigh the factors which justify or proscribe the conduct complained of. The answer must be found in the context of the record or in trying to determine what actually happened in the court below.

When we examine the record in the light of Minnesota's unique procedure in criminal trials, we cannot agree that Liebgott was called by the prosecuting attorney for the purpose of imputing culpability. Although the prosecution has the burden of proof beyond a reasonable

doubt, the prosecuting attorney in Minnesota is not given the right to closing summation to the jury. Minn. St. 631.07 provides as follows:

"When the evidence shall be concluded upon the trial of any indictment, unless the cause shall be submitted on either or both sides without argument, the plaintiff shall commence and the defendant conclude the argument to the jury."[1]

The prosecuting attorney may anticipate that in the defense's final argument to the jury it may be asserted that inferences favorable to the defendant follow from a failure of the state to call such witnesses. To forestall this possibility the prosecution calls the codefendants and takes a chance on either being hurt or helped by what they say. While this may explain the practice, we are not satisfied that it justifies it. In the Maloney case, Judge Hand pointed out (262 F. [2d] 537):

"* * * if the accused at any state of the trial should argue that the failure to call such a witness indicated that he would not support the charge, the prosecution should be free to disclose the fact that it had reason to suppose that the witness would refuse."

Unlike Minnesota procedure the prosecuting attorney in Federal court has a rebuttal argument. It does not seem to us that § 631.07 presents an obstacle to the protection of the state's rights in a criminal trial, and there is no reason why the procedure with reference to this issue could not be established by ground rules agreed upon and determined by counsel and the trial court either before or during the trial.

In any event, we must determine the issue before us on the basis of the record. It appears from the record that the public defender and

[1]See, Kunkel and Geis, *Order of Final Argument in Minnesota Criminal Trials*, 42 Minn. L. Rev. 549. A crime commission report in 1927, referring to this procedure, stated: "* * * the present practice is peculiar to Minnesota. In all other states, the final word of counsel to the jury is given to the prosecution. That rule is based upon the logic of the situation. The party having the burden of proof is regularly accorded the final argument. It is submitted that this rule is particularly apt in criminal cases, where * * * the state has the burden of proof beyond a reasonable doubt, the greatest burden of proof known to the law." Minnesota Crime Commission Report, 1927, p. 34.

the attorney for the witness objected at the time the witness was sworn that he could not testify because he was a codefendant or accomplice. There was no objection that a claim of privilege by the witness would prejudice the defendant. When the witness was called, the court and counsel retired to chambers, at which time the following proceedings occurred:

"[Public defender]: I will make my argument as short as possible, Judge. I tried to look up some authority on this particular point. I could find absolutely nothing in Minnesota. I did find in Corpus Juris Secundum that they give us a general principle, and in some states the Defendant who is a co-defendant or an accomplice, when he is not on trial himself, can refuse to be sworn in if he so desires. However, I could not find any law in Minnesota on it, and so it would be my broad understanding from reading the Corpus Juris Secundum that they seem to imply, anyhow, it is pretty much within the Court's discretion.

"THE COURT: Then do I understand that the objection of counsel for the defense is to the swearing of the witness Liebgott as a witness in this case called by the State?

"[Public defender]: That's right. And, maybe, as a practical matter, if and when the State calls Smith, so we don't have to go through it again, I will make the same objection on that basis, provided that the—

"THE COURT: The record may show that the same objection of counsel for the Defendant made as to the witness Liebgott will also be understood as taken to the witness Smith—is that his name?

"[Public defender]: Smith, that's right.

"THE COURT: —if Smith is called as a witness by the State; and I appreciate the courtesy of counsel in so stating to the Court his objection on a further witness at this time, so we will not have a further conference concerning the other witness or witnesses, the legal problem pertaining to which is the same."

After further discussion, the court stated:

"* * * The objection of [the public defender] is overruled. The witness will be sworn and be put on the witness stand. The State will

be permitted to put questions to the witness. If the witness invokes the privilege against answering any questions on the ground that the answer might incriminate him, the Court will not make any further inquiry and the record will stand on the statement made by the witness."

It is apparent from the foregoing that there was no claim on the part of defendant that he would be prejudiced if the witness claimed immunity. Both the public defender and the witness' counsel were interested in securing from the court assurance that his claim of immunity would be respected. The whole proceeding related to the protection of the rights of the witness rather than the defendant. The proceedings also indicate that no claim was made to the court that the prosecuting attorney was calling the witness for the sole purpose of creating an atmosphere prejudicial to the defendant. Furthermore, it is not clear from the record of the proceedings that Liebgott would not testify. The court said:

"* * * If the witness invokes the privilege * * * the Court will not make any further inquiry and the record will stand on the statement made by the witness."

Moreover, it is apparent here that the defense was not concerned with the prejudicial effect of Liebgott's testimony. No request was made to strike the testimony nor was the court requested to instruct the jury not to draw any unfavorable inferences because the witness claimed immunity. There is no showing here that the trial court permitted the prosecutor to knowingly engage in conduct so prejudicial as to amount to reversible error. Where such a charge is made it should, as stated in the Hiss case (185 F. [2d] 832), "be made good by showing a successful effort to influence the jury against a defendant by some means clearly indefensible as a matter of law. It is not enough if there are no more than minor lapses through a long trial." The questions put to Liebgott were not of the nature of those referred to in Washburn v. State, 164 Tex. Cr. 448, 451, 299 S. W. (2d) 706, 707, where a co-defendant was asked "fact-laden questions" which permitted the state "to plant in the jury's mind full details as to how they claimed [the]

crime was committed, and yet the only substantive evidence which they were producing was the answer of the witness that he refused to answer on the ground that his answers might tend to incriminate him, which of course was no evidence at all."

Few records in criminal cases are entirely free from error.[2] As Judge Chase pointed out in the Hiss case, not every error that occurs in a trial is prejudicial. We are satisfied that the record establishes sufficient proof of defendant's guilt to support the verdict. The questions asked of Liebgott by the prosecuting attorney were brief, were not fact-laden, and did not go to the substance of the offense. We cannot agree with the claim that the prosecutor's examination of Liebgott was prejudicial.

■ It is next argued that the defense was denied the right of full cross-examination of the witness McCarty in violation of due process of law under U. S. Const. Amend. XIV and Minn. Const. art. 1, § 7. The claimed error arose from these circumstances. After he had completed his recross-examination, defendant's counsel advised the court that he was releasing the witness "subject to any further cross-examination during the course of this trial—subject to call, rather." The court thereupon stated, "The court has indicated to Counsel that this witness at this time may be withdrawn, subject to recall for further cross-examination." Several days later, after the state had rested its case, the defense counsel called the witness McCarty for further cross-examination. At this point the trial court was interested in knowing from the public defender the purpose of the further cross-examination. The public defender stated:

"I wanted to inquire of him on cross examination about one conversation with his landlady that I forgot to inquire the first time he

---

[2] The defense in oral argument now calls attention to the fact that Liebgott had invoked the privilege when he was called as a witness for the state in State v. Smith, 264 Minn. 307, 119 N. W. (2d) 838. This claim is supported by reference to a newspaper clipping made a part of moving papers in connection with a motion for a change of venue before another judge. This material is not only hearsay but was not called to the attention of the trial court or considered by him in the present proceedings.

was on cross examination, and * * * about a certain article that was in the newspaper that I knew that it was in the newspaper. I didn't know what newspaper it was in at the time, and since then I have been able to get a copy of the newspaper."

The court expressed the view that the offer of proof was not of sufficient substance to permit further cross-examination. The public defender then elaborated as follows:

"* * * The gist would be what he told her [the landlady] about being in Unise's Bar that evening and also what he told her about the disposition of his case. And in regard to the newspaper, it's about whether or not it had been reported in the newspaper that he had been beaten and robbed in Virginia, Minnesota.

* * * * *

"* * * I would add this: that at the time this one question about getting a hold of the newspaper was one of the reasons that I asked that he could be excused, allowed to be excused, at that time, subject to recall.

* * * * *

"I would like to put in the record that at the time I didn't know where the newspaper was, whether it would be necessary to subpoena the original in or what foundation would have to be laid, and subsequent to that time I did have a conversation with Mr. Frank [prosecuting attorney], that he would waive objection as to foundation but, naturally, reserved his right to object to its admissibility."

Apparently the trial court had difficulty in understanding the relevancy or materiality of what McCarty told the landlady "about being in Unise's Bar" and about "the disposition of his case." What the defense attorney proposed to establish by this line of examination does not appear from the record. At any rate the trial court decided not to reopen the state's case for the purpose of permitting further cross-examination of the witness McCarty but did tell defense counsel —

· "Well, it appears to me that there are no rights of this Defendant that can be at all prejudiced, if those are the two points that Counsel for the Defense desires to attempt from the witness, because, of course,

they are obtainable from the witness on cross examination in the case in chief of the Defendant."

We do not understand from the foregoing proceedings that defendant was prevented from further pursuing cross-examination of the witness McCarty. The only effect of the court's ruling was that defendant's counsel was compelled to postpone calling this witness until after his opening statement the next day. As we understand the record, the court was telling defense counsel that sometime before he completed his case he could call the witness for such further cross-examination as was proper. McCarty was not called for further cross-examination, although the public defender had every opportunity to do so. We think the trial court might well have permitted further cross-examination at the time defense counsel requested it. However, since an opportunity was given to continue the cross-examination at a later time in the trial, we do not see that any prejudice could result.

This opinion will not be extended to a discussion of other points raised by defendant either because they have already been determined in our decision in the Smith case or are without merit.

Affirmed.