**Adam Amos MACK and Shelton Williams, Appellants,**

v.

**Victor G. WALKER, Warden, Louisiana State Penitentiary, Appellee.**

**No. 21993.**

United States Court of Appeals Fifth Circuit.

Sept. 26, 1966.

Jacob S. Landry, New Iberia, La., James Domengeaux, Lafayette, La., A. J. Resweber, New Iberia, La., for appellants.

Knowles M. Tucker, Dist. Atty., New Iberia, La., T. W. Airhart, Jr., Asst. Atty. Gen., Baton Rouge, La., for appellee.

Before WISDOM and COLEMAN, Circuit Judges, and DAWKINS, District Judge.

WISDOM, Circuit Judge:

Petitioners, Mack and Williams, were indicted in Iberia Parish, Louisiana, for murder, convicted, and sentenced to death. The Louisiana Supreme Court affirmed the conviction. State v. Mack, 1962, 243 La. 369, 144 So.2d 363, cert.

denied 1963, 373 U.S. 917, 83 S.Ct. 1306, 10 L.Ed.2d 416. The petitioners then filed this habeas corpus proceeding. The district court denied relief. United States ex rel. Mack v. Walker, 1964, 231 F.Supp. 819. On appeal, the petitioners contend that they were denied due process and equal protection of the law: (1) by the systematic inclusion of Negroes on the general venire and the grand jury venire and (2) by the state's refusal to furnish a verbatim transcript of their trial proceedings without cost to them. We affirm.

## I.

■ A. This Court has held that purposeful inclusion of Negroes on a selected grand jury venire of twenty in Jefferson Davis Parish, Louisiana, failed to meet constitutional standards for a fair jury system. Collins v. Walker, 5 Cir. 1964, 329 F.2d 100, on rehearing, 1964, 335 F.2d 417, cert. denied, Hanchey v. Collins, 379 U.S. 901, 85 S.Ct. 189, 13 L.Ed.2d 175. Collins relied on Cassell v. State of Texas, 1954, 339 U.S. 282, 70 S.Ct. 629, 94 L.Ed. 829, in which the Supreme Court said:

"Proportional racial limitation is therefore forbidden. An accused is entitled to have charges against him considered by a jury in the selection of which there has been neither inclusion nor exclusion because of race."

In July of this year, however, the Court, sitting en banc, overruled Collins v. Walker. Brooks v. Beto, 5 Cir. 1966, 366 F.2d 1. Brooks held that jury commissioners are under the duty of consciously including Negroes on a selected grand jury venire of sixteen in order to comply with the constitutional requirement that the jury represent a cross-section of the community.[1] The Brooks ruling compels this Court to hold that the conscious inclusion of four Negroes on the Iberia grand jury venire was not violative of the petitioners' right to a fairly selected jury.

B. The Iberia Parish jury commissioners endeavored to establish fair procedures for the selection of both the general venire of 300 and the grand jury venire of 20. In particular they made a conscious effort to have the general venire and the grand jury represent a cross-section of the parish.

Mack and Williams were first indicted by the Iberia Parish grand jury January 5, 1961. The defendants filed a motion to quash on the ground that Negroes were systematically excluded from the grand jury venire and the general venire (from which both the grand and petit juries are derived). The State District Court quashed the indictments. In April the state district judge ordered the Iberia jury commissioners to purge the jury panels and venire boxes and to draw a new general venire. The district judge instructed the commission, in part, as follows:

The law is plain that jury commissioners cannot take into consideration the race of a prospective juror in passing upon his qualifications. That means, therefore, that you cannot effectively include a certain percentage of Negroes in the venire boxes any more than you can exclude any Negro because of his race.

The official 1960 census shows that Iberia Parish had a total population of 51,657, of whom 14,781 were Negroes. The registered voters in the parish at the time of the trial numbered 21,023, of whom 4,427 were Negroes. A jury pool

---

1. "To fairly represent the community, there must be an awareness of the make-up of that community. Even random selection from broad lists, such as voter registration records, city directories, tax rolls, public utility customer lists, and the like, inescapably requires a basic preliminary test: do each, or all, or some, give a true picture of the community and its components? Of course that condition precedent may be satisfied only by testing this 'sample' against the known components—racial, economic, sociological, educational, etc. It is inevitable, therefore, that jury selectors be *conscious* of those components. And where identifiable racial groups are significant elements, that means there must be an awareness of race as such." Brooks v. Beto, 5 Cir. July 29, 1966, 366 F.2d 1.

of 1000 names was drawn by taking each twentieth name on the voters registration list. Of these 1000, 165 were eliminated because of disqualifications under LSA–R.S. 15:172. Of the 835 remaining, 124 were Negroes. The general venire of 300 was chosen at random from the list of 835 names. The jury commissioners then selected from the general venire twenty citizens possessing the qualifications of grand jurors, taken from different portions of the parish, as far as practicable, to serve as grand jurors. The petit jury venire of 30 was chosen at random from the remaining 280 names of the general venire in the jury wheel (box).

The only element in this system possibly subject to criticism is the Jury Commission's conscious effort to have the grand jury venire of twenty reflect the percentage of Negroes on the general venire (itself a cross-section of the community). This occurred despite the district judge's instructions not to maintain "a certain percentage of Negroes in the venire boxes". But this element is inherent in the method *Brooks* prescribes for small, handpicked grand jury venires.[2] In any event, *Brooks* controls this case and requires that we reject the petitioners' arguments based on Collins.

## II.

The second issue is whether a complete transcript of all the testimony was required for an adequate presentation of the indigent defendants' appeal. See Griffin v. People of State of Illinois, 1956, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891; Eskridge v. Washington State Board of Prison Terms and Paroles, 1958, 357 U.S. 214, 78 S.Ct. 1061, 2 L.Ed. 2d 1269; Draper v. State of Washington, 1963, 372 U.S. 487, 83 S.Ct. 774, 9 L.Ed. 2d 899.

The petitioners do not allege any basis for error which could not be shown by the transcript furnished them. They contend only that they did not receive a complete, word by word transcript. In Draper v. State of Washington, the Supreme Court qualified Griffin v. People of State of Illinois in recognizing that the State need not furnish a complete transcript in every case:

"In considering whether petitioners here received an adequate appellate review, we reaffirm the principle, declared by the Court in Griffin, that a State need not purchase a stenographer's transcript in every case where a defendant cannot buy it. 351 U.S., at 20 [76 S.Ct., at 591]. Alternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise. A statement of facts agreed to by both sides, a full narrative statement based perhaps on the trial judge's minutes taken during trial or on a court reporter's untranscribed notes, or a bystander's bill of exceptions might all be adequate substitutes, equally as good as a transcript. Moreover, part or all of the stenographic transcript in certain cases will not be germane to consideration of the appeal, and a State will not be required to expend its funds unnecessarily in such circumstances. If, for instance, the points urged relate only to the validity of the statute or the sufficiency of the indictment upon which conviction was predicated, the transcript is irrelevant and need not be provided. If the assignments of error go only to rulings on evidence or to its sufficiency, the transcript provided might well be limited to the portions relevant to such issues." 372 U.S. at 495, 83 S.Ct. at 779.

United States ex rel. Weston v. Sigler, 5 Cir. 1962, 308 F.2d 946, decided before the Supreme Court decided *Draper,* provides no support for the petitioners. In *Weston,* the petitioner alleged: first that a recording machine had broken down and that all of the testimony of a prospective juror on his voir dire examination was not available to the Supreme Court, and that a bill of exception had been reserved

---

2. See special opinion of Wisdom, J., Brooks v. Beto, 5 Cir. July 29, 1966, 366 F.2d 26.

on the ruling of the trial judge; second, that a word by word transcript was necessary to show that the State did not produce a corpus delicti or that one of the elements for the crime for which he was charged was not proven. We do not have those issues present in the instant case. Here the petitioners do not show or allege any basis for error which was not nor could not be shown by the transcript furnished them. The only contention is that they did not receive a full transcript.

In Louisiana the scope of appellate review in criminal matters covers "questions of law alone"; determination of the factual question of guilt or innocence is within the sole province of the jury. La.Const. Art. 7, § 10; Art. 19, § 9. The transcript or record on appeal must be complete. LSA–R.S. 15:556. It includes the caption, a statement of time and place of holding court, indictment or information with the indorsement, arraignment, plea of the accused, mention of impaneling of jury, verdict and judgment of the court. State v. Bateman, 1946, 209 La. 1036, 26 So.2d 130. Objections to the conclusions drawn by the court are preserved by the reservation of a bill of exceptions. LSA–R.S. 15:498. At this time the clerk or stenographer takes down the facts upon which the objection and the ruling are based, and this, with the reasons of the judge, form part of the transcript on appeal. LSA–R.S. 15:499. Under LSA–R.S. 15:500, the bill of exceptions shows "the circumstances under which and the evidence upon which the ruling complained of is based." This section further prescribes that the evidence so taken shall not appertain to guilt or innocence. The conspicuous exception to these general rules is appellate review of the facts when the defendant alleges that his conviction was "contrary to law and the evidence" or that there was "no evidence" to sustain his conviction. In such a case, under *Griffin* and *Draper,* the defendant would be entitled to a verbatim transcript of all the testimony taken at the trial. LSA–R.S. 15:555; State v. Bueche, 1962, 243 La. 160, 142 So.2d 381.

In the instant case the question whether there was an adequate transcript presented to the Louisiana Supreme Court under the *Draper* test turns on whether the transcript would have been useful in the decision of the defendant's case. Here, however, as the Louisiana Supreme Court said in a similar case: "[A]ll of the testimony pertinent to the defendants' various bills of exceptions is contained in the record; and they have not urged that there was no evidence to support the convictions. Consequently, the recording and transcription of all of the testimony would have been of no value to them." State v. Freeman, 1964, 245 La. 665, 160 So.2d 571, 573. When the petitioners raised the same objections in the Louisiana Supreme Court, the Court stated: "This Court does not review the facts in a criminal case. The appeal is solely on questions of law. The evidence attached to the bills of exception in the instant case provides a full base for appellate review of the questions of law. Under these circumstances the trial court committed no error [in refusing to provide a verbatim transcription of all the testimony]. The decision in Griffin v. [People of State of] Illinois, supra, is not controlling."

In the circumstances this case presents, as the court below stated:

"Petitioners were accorded all of their constitutional rights under the laws of Louisiana providing for the reserving of bills of exceptions, to be made the basis of appeal from a criminal conviction, and in this connection, they were accorded their right of having all of the pertinent and relevant testimony transcribed, preserved, and presented to the Supreme Court of Louisiana in connection with their bills of exception. There is no showing of any kind by these petitioners that they were not afforded as complete a transcript as was necessary for the purposes of appeal. They were not entitled to appeal on any grounds other than the grounds preserved by properly reserved bills of exception, and the transcript furnished

them for appeal covered fully and completely all of the testimony in connection with or bearing in any way upon the bills of exception reserved."

Nor have the petitioners alleged any violation of their federal constitutional rights which would require a complete transcript.

\* \* \*

*Draper* and *Brooks* control this case. They compel this Court to affirm the judgment below.