STATE of Iowa, Appellee,

v.

Odell WHITFIELD, Appellant.

No. 55487.

Supreme Court of Iowa.

Nov. 14, 1973.

Polk County-Des Moines Offender Advocate Office, Michael J. Laughlin, Des Moines, for appellant.

Richard C. Turner, Atty. Gen., Fred M. Haskins, Asst. Atty. Gen., and Ray A. Fenton, County Atty., for appellee.

REES, Justice.

Defendant was charged by county attorney's information with the crime of delivery of a Section 1 Controlled Substance in violation of Senate File 1, section 401, Sub. 1, amended by Senate File 468, Acts of the 64th General Assembly, 1st Session (now section 204.401, The Code, 1973). Specifically, he was charged with delivery of heroin. He was tried to a jury, convicted, and sentenced, and now appeals. We affirm.

The offense is alleged to have been committed on November 17, 1971. On that date two officers of the Des Moines police department, Reaney and McVey, met one Phillip Booker, an undercover agent, in a parking lot in Des Moines to arrange for a purchase of narcotics. The officers searched Booker and his automobile, and found no narcotics. Booker then left the officers and went to the apartment of one John Pargo, and upon learning Pargo was not at the apartment, Booker went to a pool hall, where he met one Gary Main and asked him whether or not he had any drugs to sell. Main replied he was not then in possession of any drugs, but he expected to have some delivered to him shortly. Booker then met Pargo and defendant in the pool hall, and both men indicated they wished to sell drugs to Booker. After some argument, Booker agreed to buy drugs from both Pargo and defendant.

Booker and Main entered Pargo's automobile and during a short drive Booker purchased one capsule from Pargo. After making the purchase from Pargo, Booker left the automobile and proceeded down the street and entered the car belonging to the defendant. Booker there purchased one capsule from defendant.

The officers, Reaney and McVey, had been following defendant in their automobile during all of the events described above. At the moment the purchase was claimed to have been made from the defendant, the officers were about a block and a half distant from defendant and Booker and could see both men in defendant's automobile. The officers were equipped with binoculars to aid their vision if desired. After the claimed purchase from the defendant was made, Booker entered his own automobile and drove to a cemetery, where he was searched by the officers and the two capsules were handed over to them. An analysis of the capsules later established they contained heroin.

All of the foregoing facts were testified to by Booker and corroborated by the two officers insofar as they were able to observe the occurrences from their removed vantage point. Defendant testified in his own behalf and denied having made the sale or delivery to Booker, and denied that he had ever used or sold heroin.

A rebuttal witness, one Anders, was called by the State for the purpose of impeaching defendant's credibility. Certain aspects of the testimony of Anders are under attack in this appeal, and his testimony will be commented upon hereinafter.

At the close of the evidence, counsel for defendant requested that the closing arguments of counsel to the jury be reported. The trial judge indicated he would not order the closing arguments to be reported, and the record shows he made the following observation:

"As a matter of fact, the Court will remain on the Bench during arguments so that I will have a real knowledge of what has been said in argument. If there are any objections to any argument, the Reporter will be called and record will be made."

In the interests of brevity and clarity, we paraphrase from defendant's brief and argument the propositions upon which defendant relies for reversal as follows:

1. Trial court committed reversible error when it denied defendant's request that final arguments be reported in light of defendant's assignment of alleged misconduct by the prosecuting attorney during such arguments.

2. Trial court erred in overruling defendant's motion for mistrial on the grounds that defendant was effectively denied the right of cross-examination through the State's use of a rebuttal witness who asserted his Fifth Amendment privilege against self-incrimination. This assignment refers to the testimony of the witness Anders.

3. Trial court erred in overruling a motion to strike the testimony of the witness Anders on the ground that it tended to incriminate the witness who was without counsel at the time the statements were made.

4. Trial court erred in denying defendant's motion to strike Anders' testimony, said motion grounded upon lack· of proper foundation for impeachment.

5. Trial court erred in overruling defendant's opinion and conclusion objection to the question as to whether Anders had ever seen heroin in defendant's possession, and in overruling defendant's motion for mistrial made on the ground the witness Anders was not competent to state whether or not it was heroin he had seen in defendant's possession.

I. We consider first the contention of defendant that trial court committed reversible error when it denied defendant's request that final arguments of counsel to the jury be reported.

Section 624.9, The Code, provides:

"In all appealable actions triable by ordinary or equitable proceedings, any party thereto shall be entitled to have reported the whole proceedings upon the

trial or hearing, and the court shall direct the reporter to make such report in writing or shorthand, which shall contain * * * *the portions of arguments objected to, when so ordered by the court,* all objections thereto with the rulings thereon * * *." (emphasis added).

Section 624.11, The Code, provides:

"On a trial before a jury it shall not be necessary to take down arguments of counsel or statements of the court, except his rulings, when not made in the presence of the jury."

We interpret section 624.11 to mean that a record need not be made of arguments of counsel. Said section requires only rulings of the court not made in the presence of the jury to be reported.

■ It is undoubtedly true counsel for defendant, prior to closing arguments in this case, requested that a record of arguments be made. The trial court refused the same and indicated he would remain on the bench during all of arguments and that if any party desired to make a record on any portion of the arguments objected to, the reporter would be called and that portion of the argument reported. There is nothing in the record to disclose that objections to any portion of the arguments were made at the time of argument. Defendant now claims here, and asserted in his motion for new trial, that he was denied a fair trial by the prosecuting attorney's reliance on facts outside the record in final argument. Defendant concedes the county attorney is permitted wide latitude during closing arguments in drawing deductions from and inferences upon the evidence. We have repeatedly spoken to this point. See State v. Wesson, 260 Iowa 331, 340, 149 N.W.2d 190, 196; and State v. Harless, 249 Iowa 530, 535, 86 N.W.2d 210, 213.

■ Defendant had the duty to object at the time of argument to offensive or improper remarks made by the county attorney in his closing arguments, and unless such objection was made he waived his right to complain of such offensive or improper remarks in a motion for new trial or on appeal here. See State v. Horsey, 180 N.W.2d 459, 460 (Iowa 1970); State v. LaMar, 260 Iowa 957, 967, 151 N.W.2d 496, 502; State v. Wesson, *supra;* and State v. Allison, 260 Iowa 176, 183, 147 N.W.2d 910, 914.

This assignment of error by defendant, an indigent, is bottomed upon the equal protection argument which finds support in Griffin v. Illinois, 351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891. In *Griffin,* the United States Supreme Court held that "[d]estitute defendants must be afforded an adequate appellate review as defendants who have money enough to buy transcripts." See 76 S.Ct. 591. Such holding rested on the constitutional guaranties of due process and equal protection, both of which call for procedures in criminal trials which allow no invidious discriminations between persons or different groups of persons.

In Mayer v. City of Chicago, 404 U.S. 189, 92 S.Ct. 410, 30 L.Ed.2d 372 (decided Dec. 13, 1971), the Supreme Court said, at page 414 of 92 S.Ct.:

"A 'record of sufficient completeness' does not translate automatically into a complete verbatim transcript. We said in *Griffin* that a State 'may find other means (than providing stenographic transcripts for) affording adequate and effective appellate review to indigent defendants.' 351 U.S., at 20, 76 S.Ct., at 591. We considered this more fully in Draper v. Washington *supra,* 372 U.S. [487] at 495-496, 83 S.Ct. [774], at 779 [9 L.Ed.2d 899]:

"'Alternative methods of reporting trial proceedings are permissible if they place before the appellate court an equivalent report of the events at trial from which the appellant's contentions arise. A statement of facts agreed to by both sides, a full narrative statement based perhaps on the

trial judge's minutes taken during trial or on the court reporter's untranscribed notes, *or a bystander's bill of exceptions* might all be adequate substitutes, equally as good as a transcript. Moreover, part or all of the stenographic transcript in certain cases will not be germane to consideration of the appeal, and a State will not be required to expend its funds unnecessarily in such circumstances. If, for instance, the points urged relate only to the validity of the statute or the sufficiency of the indictment upon which conviction was predicated, the transcript is irrelevant and need not be provided. If the assignments of error go only to rulings on evidence or to its sufficiency, the transcript provided might well be limited to the portions relevant to such issues.' "

Our criminal procedure adequately protects defendants in circumstances similar to the matter before us here. Section 786.5, The Code, 1971, provides:

"Either party may take an exception to any decision or action of the court, in any stage of the proceedings, not required to be and not entered in the record book, and reduce the same to writing, and tender the same to the judge, who shall sign it if true, and if signed it shall be filed with the clerk and become a part of the record of the cause."

Section 786.6, The Code, 1971, provides:

"If the judge refuses to sign it, such refusal must be stated at the end thereof, and it may then be signed by two or more attorneys or officers of the court, or disinterested bystanders, and sworn to by them, and filed with the clerk, and it shall thereupon become a part of the record of the cause."

■ The exceptions of defendant to improper argument by county attorney, if any there was, could have been preserved for review here by the alternative method provided for in the last two sections cited above. The error, if any there was, was not properly preserved. Adequate facilities for review are provided by the last two cited sections, and it was incumbent upon defendant to resort thereto. The court, in refusing to order the reporting of the closing arguments of counsel, was acting well within the limits of proper discretion, and we find no merit in this assignment of error made by defendant.

■ II. The defendant testified on his own behalf, and unequivocally denied all of the testimony of the prosecuting witness Booker. He stated that he did not use heroin and did not sell it, and that he specifically did not sell heroin to Mr. Booker or anyone else on November 17, 1971.

The State called Gene Anders as an involuntary rebuttal witness. Questions were put to him concerning any prior dealings in heroin he had had with the defendant, presumably to impeach the defendant's statements that he had never been involved with heroin. After some initial inquiry, Anders claimed the privilege against self-incrimination for all further questions put to him by the prosecutor. In order to afford the witness the protection of his constitutional rights, the trial judge then designated Attorney Dwight James to represent Anders and to advise him concerning his testimony.

The defendant now claims the prosecution acted improperly in bringing Anders to the stand as a witness, alleging the prosecutor had knowledge that Anders would invoke his Fifth Amendment privileges; that it was the design of the prosecution to create an inference of criminal dealings between the witness and the defendant; and thus the defendant was effectively denied the right of cross-examination of Anders. Under certain circumstances such an argument might be meritorious and has been given weight by several courts when the witnesses for the prosecution are accomplices, co-conspirators, co-defendants, or even those apparently associated with

defendants in relevant criminal activities. See 86 A.L.R.2d 1443, Anno. at pp. 1446, et seq. In such instances, a finding of reversible error has been predicated generally on the following combinations of circumstances (86 A.L.R.2d at 1444–1445):

"[I]t must appear directly or inferentially

(1) that the witness appears to have been so closely implicated in the defendant's alleged criminal activities that the invocation by the witness of a claim of privilege when asked a relevant question tending to establish the offense charged will create an inference of the witness' complicity, which will, in turn, prejudice the defendant in the eyes of a jury;

(2) that the prosecutor knew in advance or had reason to anticipate that the witness would claim his privilege, or had no reasonable basis for expecting him to waive it, and, therefore, called him in bad faith and for an improper purpose;

(3) that the witness had a right to invoke his privilege;

(4) that defense counsel made timely objection and took exception to the prosecutor's misconduct; and

(5) that the trial court refused or failed to cure the error by an appropriate instruction or admonition to the jury."

Viewed in the light of the foregoing, defendant's arguments lose all force. Initially we observe the questions asked of Anders by the prosecutor were brief, were not "fact-laden" as to the crime defendant was charged with having committed, and did not even go to the substance of that offense. This leads us to conclude the action of the prosecutor in calling Anders was not improper. See State v. Mitchell, 268 Minn. 513, 130 N.W.2d 128, 133.

Secondarily, although closely related to the foregoing discussion, defendant has not made a showing that the State called this witness merely to prejudice him. On the contrary, the questions put to the witness Anders were designed to impeach defendant's earlier testimony that he had never dealt with heroin, and nothing was elicited regarding the immediate offense with which defendant was charged. The trial court permitted the answers of Anders to remain in the record as relevant for the purposes of the impeachment of the defendant. The defendant has not established that the conduct of the prosecutor in calling Anders to the stand was motivated by improper considerations, and we agree with the trial court.

The record fails to establish that the prosecution called Anders with knowledge that he would assert his Fifth Amendment privileges; in fact, we believe it tends to establish exactly the opposite situation. The interrogation of Anders by the assistant county attorney indicates to us the prosecutor had a belief that Anders would in fact testify that he had had prior dealings in drugs with the defendant. The following brief excerpt from the record is illuminative of this fact:

By Mr. VanSlingerlandt:

Q. Now, Mr. Anders, isn't it a fact that on at least two occasions an Assistant County Attorney by the name of Jim Vincent has talked to you at home or someplace, isn't that correct?

A. Correct.

Q. And he didn't threaten you or promise you anything, did he?

A. Right; that wasn't about this trial at all.

Q. Okay. Just a minute. In fact, he approached you about using you on another Heroin case, a Mr. John Pargo, isn't that correct?

A. Yes.

Q. And you agreed to that, didn't you?

A. No, I just brushed him off to get rid of him.

Q. You are denying now—

A. Yes, I deny that.

The foregoing is sufficient to indicate to us that the prosecution called Anders in good faith and for a proper purpose. The contention of defendant in this assignment of error is without merit.

■ III. We are unable to perceive merit in the contention of defendant that the trial court erred in overruling the motion of Mr. Dwight James, the attorney appointed to represent the witness Anders, to strike from the record the testimony of Anders relative to his knowledge that defendant in this cause had been observed by Anders to be in the possession of heroin.

The objection by Mr. James was not directed at the incrimination of the defendant in the case at bar, and was directed only to the protection of the Fifth Amendment rights of the witness Anders. We conclude the defendant here has no standing to assert error in regard to any violation of Anders' privilege against self-incrimination.

"The privilege of a witness of refusing to answer on the ground of self-incrimination, * * * is for the protection of the witness and not for that of any other persons, * * *.

"In a criminal prosecution, neither the prosecution nor the party against whom the prosecution is brought has the right to object for the witness."
98 C.J.S. Witnesses § 451, pp. 291–294.

"And inasmuch as the privilege of a witness is personal, the accused may not on appeal urge error in requiring a witness to answer a question notwithstanding his claim of privilege."
58 Am.Jur., Witnesses, § 83, p. 72.

The questions put to the witness Anders and his answers appear in the record as follows:

Q. Do you know a person by the name of Odell Whitfield?

A. I do.

* * * * * *

Q. Have you ever bought any Heroin from him?

A. Do I have to answer that?

THE COURT: Just a minute. We are getting into this—

MR. VANSLINGERLANDT: I have another question, Your Honor, that might perhaps clear—

Q. Have you ever seen Heroin in his possession?

MR. CRITELLI: That is calling for an opinion and conclusion of this witness.

THE COURT: Overruled. He may state whether he has seen Heroin in his possession or not.

A. I think so.

Q. How many times?

A. Whenever he does it.

Q. Have you ever paid him any money?

It was at the end of the foregoing colloquy between counsel and the witness Anders that the court and the prosecuting attorney agreed the questioning should be halted so an attorney could be appointed for Mr. Anders to assure protection of his Fifth Amendment rights; whereupon, Mr. James was appointed to represent Anders.

The defendant here contends the refusal of the trial court to strike Anders' testimony was error. The appellee cites the following, found in Couch v. United States, 409 U.S. 322, 93 S.Ct. 611, 616, 34 L.Ed.2d 548 (decided January 9, 1973):

"It is important to reiterate that the Fifth Amendment privilege is a *personal* privilege: it adheres basically to the person, not to information which may incriminate him. As Mr. Justice Holmes put it: 'A party is privileged from producing the evidence, but not from its production.' Johnson v. United States,

228 U.S. 457, 458, 33 S.Ct. 572, 57 L.Ed. 919 (1913). The Constitution explicitly prohibits compelling an accused to bear witness 'against himself': it necessarily did not proscribe incriminating statements elicited from another. Compulsion upon the person asserting it is an important element of the privilege, and 'prohibition of compelling a man . . . to be witness against himself is a prohibition of the use of physical or moral compulsion to extort communication from *him*.' Holt v. United States, 218 U.S. 245, 252–253, 31 S.Ct. 2, 6, 54 L.Ed. 1021 (1910) * * *. It is extortion of information from the accused himself that offends our sense of justice."

Requiring the witness Anders to answer the questions put to him did not violate defendant's constitutional rights against self-incrimination.

IV. Following the overruling by the court of the motion made by Mr. James, attorney for Anders, to strike the testimony referred to in the last preceding division, counsel for defendant moved for a mistrial on the grounds that there was lack of proper foundation for impeachment. The record sets out the following colloquy between the court and counsel for defendant:

THE COURT: In reading the record over, this Court notes there was no objection to the question asked by the counsel for the defendant having to do with his witnessing narcotics in the possession of this defendant. That answer came in without objection from counsel for the defendant.

MR. CRITELLI: Excuse me, Your Honor.

THE COURT: There is no objection as to foundation for that question at that time. The first objection as to improper foundation is now. For that reason, the motion is overruled.

A motion to strike testimony must be made as soon as the grounds therefor are apparent, or as soon as is convenient after the objectionable statements are given by the witness. Ver Steegh v. Flaugh, 251 Iowa 1011, 1017, 103 N.W.2d 718, 722; Trachta v. Iowa State Highway Comm., 249 Iowa 374, 381, 86 N.W.2d 849, 854. If testimony is received without objection, there being no justification for delay in moving to strike it, the trial judge has discretion as to whether to entertain the belated motion to strike. Staley v. Fazel Bros. Co., 247 Iowa 644, 650, 75 N.W.2d 253, 256; Glatstein v. Grund, 243 Iowa 541, 549, 51 N.W.2d 162, 168, 36 A.L.R.2d 531, 541.

Clearly, there is no showing the trial court abused its discretion in overruling defendant's motion for a mistrial on the above ground.

V. The only objection made by defendant's counsel to questioning the witness Anders as to whether or not he had ever seen heroin in the possession of the defendant was that the question "called for an opinion and conclusion of the witness".

Defendant now contends the court erred in overruling said objection for the reason the witness was not competent to state whether it was heroin he had seen in defendant's possession. The objection, however, was too general to raise the question of the competency of the witness.

Opinion evidence is not inadmissible solely on the ground that it calls for the opinion and conclusion of the witness. Rather, some specific reason for its exclusion must be stated in the objection to the interrogatory put to the witness, and it is the duty of counsel to point out the particular defect or defects. Twin-State Engineering & Chemical Co. v. Iowa State Highway Comm., 197 N.W.2d 575, 581 (Iowa 1972); In re Marriage of Boyd, 200 N.W.2d 845, 850 (Iowa 1972); Hedges v. Conder, 166 N.W.2d 844, 856 (Iowa 1969).

■ The trial court has wide latitude of discretion in admitting or excluding testimony based on an opinion or conclusion. Brower v. Quick, 249 Iowa 569, 577, 88 N. W.2d 120, 125; Bash v. Hade, 245 Iowa 332, 337, 62 N.W.2d 180, 183. There is no merit in this contention of defendant.

On the whole record we find no reversible error, and the case is affirmed.

Affirmed.

MOORE, C. J., and LeGRAND, J., concur.

UHLENHOPP, J., concurs specially.

McCORMICK, J., concurs specially joined by MASON, REYNOLDSON and HARRIS, JJ.

RAWLINGS, J., dissents.

UHLENHOPP, Justice (concurring specially).

I think §§ 624.9 and 624.11 of the Code relate to matters which the parties are entitled *as of right* to have reported. On the other hand, I think the parties should not be entitled as of right to have all arguments reported.

No one claims all arguments always must be reported. A large amount of oral argument need not be taken down; to do so serves no useful purpose. The question, then, is this: who shall determine which portions shall be reported—the parties or the trial court? It seems to me the matter should be left to the discretion of the trial court but the parties' requests for a record should be liberally granted where reason therefor appears. I believe that this is the practice which is widely followed and and that attorneys can adequately protect their record by this system if they are alert. The moment argument begins to be questionable, they can request a record.

One situation may require special treatment. If counsel desires to have a record made of his own argument other than the final argument, his request should ordinarily be granted. If it is refused, we should not indulge in a presumption that opposing counsel's subsequent argument was merely responsive.

I also think that reporters are not entitled to extra compensation for reporting arguments. Consequently I see no constitutional problem in allowing trial courts some discretion in the matter of the arguments to be reported.

A reason given by the trial court here for refusing to have the arguments entirely reported is untenable—the extra expense of the reporter's charge. But the trial court was nonetheless within its discretion in refusing the request. Counsel did not request to have a record made of objectionable portions of the arguments. Hence we are not required to pass upon a refusal to grant such a request.

I concur in affirmance of the judgment.

McCORMICK, Justice (concurring specially).

I am unable to agree with the basis of Division I in the majority opinion.

In refusing defense counsel's request that final arguments be reported, trial court said in part:

"The court takes note of the fact that the defendant is represented by Mr. Critelli under a court appointment at the expense of the state. Because of the affidavit of indigency, the court assumes he is without funds to pay the reporter for reporting arguments. The court feels it would be an improper expense to tax the state for reporting arguments in this case."

This is the exercise of trial court "discretion" now upheld. I believe trial court's ruling was wrong on factual, statutory, constitutional, and policy grounds.

I. *The facts.* Trial court's ruling assumes a court reporter is entitled to compensation other than his salary when ordered to report final arguments of counsel. I am unaware of any basis for such an assumption. Court reporters are full-time public employees. Their duties and compensation are set by statute. Code § 605.6 requires a reporter "upon the request of either party in a civil case or a criminal case, [to] take and report in full the oral evidence and proceedings in the case and perform all duties required of him on the trial, as provided by law." Code § 605.7 provides, "He shall attend such sessions of the court and perform such other reporting and related duties in aid of the court as the judge who appointed him may direct * * *." For his services he receives an annual salary fixed in Code § 605.8 (as amended by Acts 1973 G.A. ch. 284, § 1).

He is reimbursed for travel expense under Code § 605.10 (as amended by Acts 1973 G.A. ch. 284, § 3). Litigants are charged for reporter services as part of court costs. § 605.12, The Code, as amended by Acts 1973 G.A. ch. 284, § 6. It is unlikely the legislature intended litigants to be charged by both the court and the reporter for reporter services. The only extra compensation the court reporter is authorized to receive for performance of his assigned duties is for transcription of his original notes under Code § 605.11. He is not entitled to be paid anything other than his salary for performing other duties assigned by the court including reporting, i. e. making original notes, of final arguments.

This is not like a situation where counsel contracts privately for reporter services. This is a question of the reporter's statutory, court-ordered duty.

Since trial court's ruling was predicated entirely on an erroneous factual basis, it cannot be upheld as an exercise of sound discretion.

II. *The statutes.* I do not agree with the majority's interpretation of Code § 624.11. It would be strange for the legislature to make arguments part of trial proceedings, Code § 780.6, require portions of arguments objected to be reported when ordered by the court, Code § 624.9, and at the same time say in Code § 624.11 that arguments need not be reported. I believe the legislature plainly mandates reporting of final arguments upon order of the court.

A more reasonable interpretation of Code § 624.11 is that in jury trials arguments of counsel not made in the presence of the jury need not be reported. Likewise, statements of the court, except rulings, made out of the jury's presence, need not be reported. The intent is obvious. Arguments (and court statements other than rulings) out of the jury's presence do not affect the jury verdict and hence cannot be an essential part of the record.

The applicable statutes authorize the court to order reporting of final arguments and intend the authority be exercised in proper cases. I believe this was such a case.

III. *The Constitution.* Although the United States Supreme Court has left the door open to permit states to provide equivalent alternatives to reporting and subsequent transcription of arguments to provide effective appellate review, our cases plainly show there is no equivalent alternative in this state.

We have made it impossible to secure reversal of a criminal conviction based upon prosecutor misconduct without a complete record of arguments in situations where otherwise prejudicial remarks can be presumed fair rebuttal to remarks of defense counsel. See, e. g., State v. Latham, 254 Iowa 513, 517, 117 N.W.2d 840, 843 (1962) ("Where the argument for the defense is not before us the argument for the State is presumed to be in response thereto. If responsive it was not error."). Trial court told defendant in this case he had no right to make the very record we have said is indispensable for him to preserve error.

Disagreements arise over efforts to prepare a bill of exceptions. See, e. g., State v. Horsey, 180 N.W.2d 459, 461 (Iowa 1970) ("Quite obviously court and counsel were at odds over the accuracy of the recitations of the bill. This is, at best, an unsatisfactory record to ask our acceptance of defendant's disputed version of what was argued."). The bill of exceptions procedure is wholly unsatisfactory. It is full of technical traps for the unwary. See, e. g., State v. Kilduff, 160 Iowa 388, 393–394, 141 N.W. 962, 963–964 (1913), and citations. As State v. Horsey, supra, illustrates, it can become a trial in itself. The likelihood of dispute where human memory must be relied upon to reconstruct an incident which occurred during the heat of argument is great. The procedure simply asks too much of human nature, and of course doubts are resolved against the party charged with the duty to complete the record. Everything in our cases on the subject points to one inevitable conclusion: there is no equivalent alternative in Iowa to the full reporting of final arguments.

Yet we have said over and over again that "alleged improper statements or prejudicial remarks of the prosecutor not preserved in the record cannot be reviewed." State v. LaMar, 260 Iowa 957, 966, 151 N. W.2d 496, 501 (1967), and citations. See State v. Kendrick, 173 N.W.2d 560, 563 (Iowa 1970), and citations.

It ill behooves this court, after stressing the necessity that counsel make a full and complete record to preserve error, to approve a ruling which deprives counsel of the means of doing so. This is especially significant where counsel is court appointed. State v. Williams, 207 N.W.2d 98, 104 (Iowa 1973) ("Assignment of counsel under such circumstances as to preclude the giving of effective aid in the preparation and trial of the case will not satisfy the necessary requisites of due process of law.").

The essence of due process is fairness. The essence of equal protection is equal justice. Neither fairness nor equal justice is possible when one accused of crime is denied the only reasonable way to assure that if he is convicted it is because his legal guilt has been established by the evidence rather than because of inflammatory remarks by a zealous prosecutor.

I believe refusal of a reporter's services during final argument in a criminal case in this state is a denial of due process and, where (as here) the accused is indigent, of equal protection.

IV. *The policy.* The policy manifest in the decisions of the United States Supreme Court, this court, and the applicable statutes is that arguments to the jury are recognized as an important, essential, and integral part of the trial process. The convenience of the court reporter and the absence of an affirmative statutory mandate that all arguments be reported do not constitute proper excuse or justification for refusing the services of this public employee in reporting them.

Our recent amendment to rule 196, Rules of Civil Procedure, by which the final draft of the court's instructions must be presented to counsel prior to argument, removes the reason previously urged for denying litigants the reporter's services during arguments. No longer can it be urged he is better occupied typing the court's final draft of instructions than reporting arguments.

Code § 624.9 clearly authorizes the court to order final arguments to be reported, and I believe it makes it a practical necessity for the court to do so when request is made. Whether arguments are reported or not a litigant has an absolute right under the statute to have his objections and the court's rulings reported. Principles governing our review make it impossible to secure reversal where this court is uninformed as to what the argument was which is assailed. We do not review objections and rulings out of context. There is simply no adequate way to reconstruct the argument to give flesh to an otherwise skeletal

objection. The procedure disrupts the trial; it annoys the court, opposing counsel and the jury; it invites argument over what was or was not said; and as anyone who has experienced such frustration knows, these interruptions frequently end with the court simply throwing up its hands and advising counsel to proceed with argument without the record being completed. These practical aspects of the problem have an inevitable chilling effect on the proper efforts of lawyers to serve their clients by making objections to improper argument. The only fair resolution of this difficulty is the simple expedient of having final arguments reported upon request. There is simply no factor or circumstance which can outweigh the advantages of having the court order the reporter to report final arguments. Rather than cast any additional burden upon the public, it would serve the manifest public interest in seeing that our system of justice accomplishes its intended purposes.

We must judicially note the large number of civil and criminal appeals coming to this court in which attorney misconduct in argument is claimed. The fact a record is being made is itself an inhibiting influence to prevent such misconduct. And a full record is the only adequate basis to assure fair review.

Trial judges ought to be told, apart from questions of constitutional and statutory law, requests that final arguments be reported should be granted.

In this case trial court erred in refusing to order arguments reported. I do not agree with the majority's statement that defense counsel waived error by failing to object to the prosecutor's argument at the time misconduct occurred. We have said an objection to improper argument is timely if made in motion for mistrial before submission of the case to the jury. Andrews v. Struble, 178 N.W.2d 391, 400–403 (Iowa 1970). However, defense counsel here did not object to remarks of the prosecutor until motion for new trial. An objection to improper argument made for the first time in motion for new trial is not timely. *Id.* at 401. ("Since the remedy for misconduct * * * is to call the attention of the presiding judge [to it] and move by some proper procedure to have the matter corrected, it is not timely to await the result of the trial and then first complain by allegation in motion for new trial in the event of an adverse verdict."). I would hold trial court erred in refusing to order arguments reported, but since no timely objection was made to the prosecutor's remarks, there was no prejudice. State v. Kelsey, 201 N.W.2d 921, 927 (Iowa 1972).

I concur only in the result.

MASON, REYNOLDSON and HARRIS, JJ., join this special concurrence.

RAWLINGS, Justice (dissenting).

I adopt the rationale upon which McCormick, J., concurs specially and supportive cited authorities, but respectfully submit trial court's denial of defendant's request that arguments to the jury be reported here alone constituted reversible error.

Surely an improvised Bill of Exceptions (Code Chapter 786) regarding isolated portions of arguments to a jury is at best a poor substitute for a transcript thereof. Stated otherwise, an alternative Bill of Exceptions is seldom, if ever, equivalent to a complete transcript. By the same token it is to me evident the voicing of objections to some fractional part of such arguments, absent any record, is usually an exercise in futility.

Bell v. Wainwright, 299 F.Supp. 521 (N.D.Fla.1969) deals with a problem peculiarly akin to that here posed. In resolving the issue presented in *Bell* the Court aptly stated at 523:

"For the purposes of an appeal the right to have a full adequate record is an absolute in the case of an indigent defendant as it is in the case of a defend-

ant who can afford to purchase the transcript.

"The present case is readily distinguishable from the case of Mack v. Walker, 5 Cir., 372 F.2d 170 (1966). In the *Mack* case the petitioners simply objected to the fact that they were not given a verbatim transcript of the trial proceedings, without showing that such a transcript was necessary for their appeal. In the present case the First District Court of Appeal of Florida concedes that:

" ' * * * the full impact of alleged remarks of counsel made in closing argument to a jury cannot be recaptured, nor can their full impact and prejudicial effect when considered in context with the total argument of counsel be accurately weighed, if the only record of such remarks consists of an effort by the trial judge to reconstruct or paraphrase the remarks for the record after objection is made.' 208 So.2d at 468.

"To deny petitioner relief on the grounds that the record does not show prejudicial comments and objections, when it is necessary to have a full transcript of the arguments in order to determine prejudice in the first place and that transcript does not exist due to the order of the trial court is a complete non sequitur.

"Respondent's contention that petitioner has foregone a remedy afforded by Rule 6.7(f), Florida Appellate Rules, is equally without merit. Rule 6.7(f) allows the preparation of a paraphrased stipulation as to the *contents of the record* on appeal. In the first place, because of the trial court's ruling there is no record from which the parties could accurately stipulate. While it is true that alternative methods of reporting trial proceedings are permissible, such methods can be used only 'if they place before the appellate court an *equivalent report* of the events at trial from which the appellant's contentions arise.' (Em-

phasis added.) Draper v. Washington, supra, 372 U.S. at 495, 83 S.Ct. at 779; Mack v. Walker, supra, 372 F.2d at 172. In light of the District Court of Appeal's assessment of the character of the error presented in this case, an assessment to which this Court subscribes, it cannot be said that Rule 6.7(f) offers an 'equivalent report' of the events at trial.

"The respondent's position places an undue burden upon the petitioner and his counsel to attempt to reconstruct an argument in order to show what might otherwise be isolated remarks by the prosecution were prejudicial. This burden would not have been placed upon petitioner had he been able to purchase the reporter's time himself. Such a burden is in direct conflict with the Due Process and Equal Protection clauses of the Fourteenth Amendment to the Constitution of the United States as interpreted in Griffin v. Illinois, supra (351 U.S. 12, 76 S.Ct. 585, 100 L.Ed. 891)."

See also Williams v. Oklahoma City, 395 U.S. 458, 89 S.Ct. 1818, 23 L.Ed.2d 440 (1969).

I would reverse and remand for a new trial.