STATE OF MINNESOTA

IN SUPREME COURT

A21-0070
A21-0583

Court of Appeals                                           Procaccini, J.
                                        Concurring, Gaïtas, J., Hudson, C.J.

State of Minnesota,

                    Respondent,

vs.                                                      Filed:  April 30, 2025
                                                    Office of Appellate Courts
Larry Joe Foster,

                    Appellant.

_____

Keith Ellison, Attorney General, Saint Paul, Minnesota; and

Mary F. Moriarty, Hennepin County Attorney, Adam E. Petras, Senior Assistant County Attorney, Minneapolis, Minnesota, for respondent.

Cathryn Middlebrook, Chief Appellate Public Defender, Jenna Yauch-Erickson, Assistant State Public Defender, Saint Paul, Minnesota, for appellant.

Barry S. Edwards, Keller Law Offices, Minneapolis, Minnesota, for amicus curiae Minnesota Association of Criminal Defense Lawyers.

_____

1

1.      Appellant did not properly preserve the question of whether a defendant, who has satisfied the required test to present an alternative perpetrator defense, is entitled to call the alternative perpetrator to appear before the jury for a nontestimonial purpose.

2.      When a defendant has satisfied the required test to present an alternative perpetrator defense, a district court has discretion under the ordinary rules of evidence to allow the defendant to call the alternative perpetrator as a trial witness, even when it is known that the alternative perpetrator will invoke their right against self-incrimination in the presence of the jury.

3.      The district court did not abuse its discretion when it denied appellant's request to call an alternative perpetrator to the witness stand based on needless presentation of cumulative evidence.

Affirmed.

O P I N I O N

PROCACCINI, Justice.

This case presents a narrow question:  When a defendant has satisfied the requirements necessary to present an alternative perpetrator defense, does the district court have discretion to allow the defendant to call the alleged alternative perpetrator as a witness when it is known that the alternative perpetrator will invoke the right against self-incrimination in the presence of the jury?

The State charged appellant Larry Joe Foster with second-degree intentional murder for the death of Daniel Bradley.  Foster asserted that another person, R.J., committed the

2

murder.  The district court determined that Foster had met the requirements set out in *State v. Hawkins*, 260 N.W.2d 150 (Minn. 1977), to present an alternative perpetrator defense.[1] Foster identified the evidence that he planned to introduce in support of his alternative perpetrator defense, including his own eyewitness testimony, evidence of R.J.'s criminal history, and photos of R.J.  He also stated that he intended to call R.J. as a trial witness.  R.J. invoked his right against self-incrimination on the stand before trial began.  Foster requested that R.J. be required to invoke the right on the witness stand in the presence of the jury.  The district court denied the request.  In doing so, the district court acknowledged a lack of clarity in the law and relied on opinions from other contexts, which state that an invocation of the right against self-incrimination lacks probative value.  The district court also provided a second, independent basis for its denial, reasoning that an invocation by R.J. would be cumulative to the other evidence that Foster planned to introduce in support of his alternative perpetrator defense.

Foster requested, in the alternative, to call R.J. to appear for a nontestimonial purpose—to allow the jury to observe R.J.'s physical characteristics and gait and compare

---

[1]     In *State v. Hawkins*, we adopted a two-step test for the admissibility of alternative perpetrator evidence.   260 N.W.2d at 159; *see State v. Carbo*, 6 N.W.3d 114, 123 (Minn. 2024) (discussing the *Hawkins* test).  The first step requires the defendant to put forth "evidence having an inherent tendency to connect such other person with the actual commission of the crime."  *Hawkins*, 260 N.W.2d at 159 (citation omitted) (internal quotation marks omitted).  The second step requires the district court to consider whether the evidence is admissible under the "ordinary rules of evidence."  *State v. Jenkins*, 782 N.W.2d 211, 224 (Minn. 2010).  If both steps are satisfied, as in this case, the defendant may "introduce evidence of a motive of a third person to commit the crime, threats by the third person, or other miscellaneous facts which would tend to prove the third person committed the act."  *Hawkins*, 260 N.W.2d at 159 (footnotes omitted).

them to security camera footage of a man who was at the scene on the day of Bradley's murder. The district court reserved its ruling on Foster's alternative request, and Foster did not raise it again. A jury found Foster guilty of second-degree murder.

Foster appealed, asserting that the district court violated his constitutional rights to present a complete defense and to compulsory process by denying his request to call R.J. to the witness stand. The court of appeals affirmed Foster's conviction, concluding that he had no constitutional right to call R.J. to the witness stand only for R.J. to assert his right against self-incrimination.

Foster's first argument to our court—that the district court abused its discretion when it did not grant his request to call R.J. to appear before the jury for a *nontestimonial* purpose (to allow the jury to observe his physical characteristics and his gait)—was not properly preserved below and is forfeited.

As to the question that is properly before us, we conclude that an alternative perpetrator's invocation of their right against compelled self-incrimination on the witness stand may have probative value in some circumstances. As a result, we hold that when a defendant has satisfied the required test to present an alternative perpetrator defense, the district court has discretion, subject to the ordinary rules of evidence, to allow the defendant to call the alternative perpetrator to the witness stand, even when it is known that the alternative perpetrator will invoke their right against compelled self-incrimination.[2] This

---

[2]  To be clear, the "right against self-incrimination" as used throughout this opinion refers to the right against *compelled* self-incrimination. As we explained in *State v. Borg*, "[w]hen the government does nothing to compel a person who is not in custody to speak,"

4

rule applies even if the defendant's sole purpose is to elicit an invocation of the right against self-incrimination.

Although we hold that the district court's first basis for denying R.J.'s motion relied on a mistaken view of the law, we conclude that the district court did not abuse its discretion because its second basis—grounded in the ordinary rules of evidence—provided an adequate independent basis for the ruling. Accordingly, we affirm the decision of the court of appeals, but on different grounds.

**FACTS**

Just after midnight on September 2, 2019, firefighters responded to a call about a fire at Daniel Bradley's Minneapolis residence and found him deceased on the floor of his living room. No one else was in the home when Bradley's body was discovered. Based on injuries to Bradley's body, investigators determined that he had been murdered. Investigators located a trail of blood that began in the room where Bradley's body was found. The trail continued out the back door, through the backyard, over Bradley's backyard fence, into a neighbor's yard, and along a sidewalk in front of Bradley's house. Forensic scientists later determined that some of the blood matched Foster's DNA profile.

Around 1:00 a.m., police received a call about an abandoned truck at a Saint Paul boat landing. The truck belonged to Foster. The truck's interior contained a significant

_____

their voluntary decision to do so does not implicate the right against self-incrimination. 806 N.W.2d 535, 543 (Minn. 2011); *see also State v. Heinonen*, 909 N.W.2d 584, 589 (Minn. 2018) (stating that the right against self-incrimination "applies only 'when the accused is compelled to make a *testimonial* communication that is incriminating'" (alteration in original) (quoting *Fisher v. United States*, 425 U.S. 391, 408 (1976))).

amount of blood, and police found a blood-soaked shirt and other clothes in the truck bed. Forensic scientists determined that the shirt contained blood matching both Bradley's and Foster's DNA profiles.

Police officers arrested Foster nine days after finding his truck. When he was arrested, Foster had cuts and abrasions on his hands, legs, and shoulders, and he wore a watch stained with dried blood. The blood on the watch matched both Bradley's and Foster's DNA profiles.

The State charged Foster with second-degree intentional murder for Bradley's death. Foster admitted to being in Bradley's home at the time of the murder, but Foster alleged that R.J. committed the murder. Foster filed a motion to raise this alternative perpetrator defense at trial. In support of his motion, Foster provided the district court with a list of supporting evidence that he planned to introduce to show that R.J. was the actual perpetrator, including Foster's own eyewitness testimony, evidence of R.J.'s criminal history, and photos of R.J. from government records. The district court granted Foster's motion to raise this alternative perpetrator defense. Foster also subpoenaed R.J. to appear as a witness. Before trial, R.J. testified under oath and outside the presence of the jury that he would invoke the right against self-incrimination if called to the witness stand in the presence of the jury. Foster argued that R.J.'s assertion of his intended invocation was untimely because he had not yet been asked to provide testimony that might incriminate him.

In considering Foster's motion to call R.J. to the witness stand, the district court first acknowledged a lack of clarity in the law related to testimony by witnesses who intend to

invoke their right against self-incrimination. The district court relied on case law from another context, which states that invocation of the right against self-incrimination has no evidentiary value. The court denied the motion because R.J. had already testified that he would invoke the right against self-incrimination if called to the witness stand in the presence of the jury. Alternatively, the court explained that an invocation by R.J. would be cumulative to the other evidence that Foster planned to introduce in support of his alternative perpetrator defense: "[A]lso in this case, all the things that you listed off that you were going to rely on to make the argument that [R.J.] was the actual perpetrator, they're still there."

Foster requested, in the alternative, to call R.J. to appear as a witness so that the jury could observe his physical characteristics and "distinct gait," which Foster alleged were "identical to [a] man [seen on security camera footage] walking around in and out of Mr. Bradley's house the day of the murder." Foster argued that the right against self-incrimination did not shield R.J. from appearing before the jury because R.J.'s physical characteristics and his gait were not testimonial in nature. Foster's request was presented as conditional, premised on the State challenging R.J.'s identity.[3] The district court did not

---

[3]    Foster's attorney stated: "*If* the State tries to attack [the] identification [of R.J. in the video footage], we would ask to call [R.J.] for the purpose of the jury identifying him, not just by how his appearance is in front of them—height, complexion, appearance—but also to see . . . [his] very distinct gait . . . . So there is some non-testimonial purposes we would want to bring him in before the jury *if* the State was to undermine or question or attack the veracity of the identification of him. . . . *In the event* they attack the veracity of him being the person in the video and there's some eyes—you know, laying their on [sic] eyes on not only himself but seeing how he walks, those are non-testimonial things that would become relevant if and when the State—*I'm not sure they're going to*—attacks the identification of him on the video by other witnesses." (Emphasis added.)

rule on Foster's request but instead left the question open, stating that it would "have to see how everything plays out."

At trial, the State called several witnesses who testified about the physical evidence found at the scene, which included Foster's blood and fingerprints at Bradley's house as well as the blood found in Foster's truck and on his watch. The State introduced security video footage that placed both Foster and the man Foster identified as R.J. at Bradley's house several times on the day of the murder, though R.J. can be seen departing from the house at 4:35 p.m. Foster testified that he was at Bradley's house several times on the day of the murder, including when the murder took place, but he alleged that he witnessed R.J. kill Bradley. Throughout trial, the State did not challenge Foster's assertions that R.J. was the man seen in the video footage, and Foster did not renew his request to call R.J. for a nontestimonial purpose. In its closing argument, the State took aim at Foster's version of events, emphasizing the lack of evidence tying R.J. to the murder or to Bradley's home during the timeframe when Bradley was murdered.

The jury found Foster guilty of second-degree intentional murder. The district court sentenced Foster to 415 months in prison. Foster appealed his conviction. Relevant here, Foster argued that the district court, by preventing him from calling R.J. to the stand at trial, violated his constitutional rights to compulsory process, due process, and a fair trial.

The court of appeals affirmed Foster's conviction. Relying on *State v. Moose*, 266 N.W.2d 521, 525 (Minn. 1978), the court of appeals asserted that a defendant may never call a witness to the stand if the defendant knows that the witness has invoked or will invoke the right against self-incrimination. Accordingly, the court of appeals concluded

that "the district court did not abuse its discretion by refusing to compel [R.J.] to take the stand for the purpose of invoking his right against self-incrimination in front of the jury." *State v. Foster*, Nos. A21-0070, A21-0583, 2024 WL 74152, at *6 (Minn. App. Jan. 8, 2024).[4]

As to the issue of whether Foster could call R.J. for a nontestimonial purpose, the court of appeals questioned whether the nontestimonial-purpose issue was properly before it because Foster had not renewed his request to call R.J. for a nontestimonial purpose and the district court never definitively ruled on that question. The court of appeals ultimately held that the district court appropriately exercised its discretion by not granting Foster's alternative motion to call R.J. for a nontestimonial purpose, pointing to the lack of authority supporting Foster's argument that a defendant is entitled "to compel a third party to appear at a criminal trial solely for the purpose of allowing the jury to observe that party's physical characteristics." *Id.* at *8.

Foster filed a petition for review, which we granted.

## ANALYSIS

We begin by addressing whether Foster properly preserved the argument that the district court abused its discretion when it did not grant his motion to call R.J. to appear before the jury for the nontestimonial purpose of showing R.J.'s physical characteristics to

---

[4]     Foster also appealed a restitution order, and the court of appeals consolidated that appeal with his direct appeal. At Foster's request, the court of appeals stayed his direct appeal to allow him to pursue postconviction relief. After the district court denied Foster's petition for postconviction relief, the court of appeals reinstated his appeal. The restitution order is not before us.

the jury.  We then address whether the district court abused its discretion when it denied Foster's request to call R.J. to the witness stand when Foster knew that R.J. would invoke the right against self-incrimination.  Our analysis of this second issue presents two questions.  We first consider whether the court of appeals correctly determined that our decision in *State v. Moose* established a categorical rule preventing a defendant from calling a witness to the stand if the defendant knows that the witness will invoke the right against self-incrimination.  Because we conclude that *Moose* did not establish such a rule, we then consider a second question:  whether—given a defendant's constitutional rights to compulsory process and to present a complete defense—a district court must have discretion to permit a defendant to call an alternative perpetrator to the witness stand when it is known that the alternative perpetrator will invoke the right against self-incrimination in the presence of the jury.  Finally, we apply our holding that district courts must have such discretion, and we explain why the district court did not abuse its discretion in this case.

I.

We first address Foster's argument that the district court abused its discretion when it did not grant his request to call R.J. to appear before the jury for a *nontestimonial* purpose[5]—to allow the jury to observe his physical characteristics and his gait.  The State argues that this issue is not properly before us.  We agree.

_____

[5]     A testimonial act " 'explicitly or implicitly[] relate[s] a factual assertion or disclose[s] information.' "  *Heinonen*, 909 N.W.2d at 593 (quoting *Doe v. United States*, 487 U.S. 201, 210 (1988)).  An act is nontestimonial when it "provides real or physical

10

Foster challenges a ruling that was never made.  The district court did not deny Foster's request to call R.J. for the purpose of showing to the jury his physical characteristics and his gait.  Instead, it *reserved* that issue.  Foster cannot challenge an alleged ruling that he claims prevented him from calling R.J. to appear for a nontestimonial purpose because "the court made no such ruling."  *See, e.g.*, *State v. Reed*, 737 N.W.2d 572, 588–89 (Minn. 2007) (stating that the appellant, who sought to challenge an alleged ruling by the district court on the admissibility of a prior conviction, "[could not] challenge the district court's ruling . . . as the court made no such ruling").

As to the district court's *reservation* of its decision, Foster did not appeal that issue to the court of appeals or this court.  We typically do not address issues that were not raised in the court of appeals.  *State v. Myhre*, 875 N.W.2d 799, 806–07 (Minn. 2016).  We therefore conclude that Foster forfeited any appellate relief based on a challenge to the district court's *reservation* of its decision when he failed to raise that issue in the court of appeals or this court.  In sum, Foster failed to properly preserve the question of whether a defendant who has satisfied the requirements to present an alternative perpetrator defense is entitled to call the alternative perpetrator to appear before the jury for a *nontestimonial*

---

evidence that is used solely to measure . . . physical properties, or to exhibit . . . physical characteristics"—for example, when a defendant "exhibit[s] himself and present[s] his features so that the police or a jury may compare his features with other evidence of the defendant's guilt."  *State v. Diamond*, 905 N.W.2d 870, 874 (Minn. 2018) (ellipses in original) (citations omitted) (internal quotation marks omitted); *see also Schmerber v. California*, 384 U.S. 757, 764 (1966) (providing examples of nontestimonial acts).

11

purpose, because the district court never ruled on that issue, and Foster failed to challenge the district court's reservation of the issue in the court of appeals or this court.[6]

## II.

Concluding that Foster failed to properly preserve the question of whether he was entitled to call the alternative perpetrator to appear for a nontestimonial purpose does not end our analysis. We also need to decide whether the district court abused its discretion by denying Foster's request to call R.J. to the witness stand when Foster knew that R.J. would invoke his right against self-incrimination. This question involves the interplay between three constitutional rights: Foster's rights to compulsory process and to present a complete defense and R.J.'s right against self-incrimination.

The Minnesota Constitution and the United States Constitution confer upon criminal defendants the rights to compulsory process and to present a complete defense. Minn.

---

[6] Even if we were to treat Foster's challenge on appeal as one to the district court's reservation of its ruling, he did not object to the reservation at trial and he did not reattempt to call R.J. to appear for a nontestimonial purpose after the district court reserved its ruling. "When a defendant fails to object at trial," they are "generally preclude[d] [from] appellate relief" unless the district court committed plain error. *State v. Lilienthal*, 889 N.W.2d 780, 784 (Minn. 2017); *see Reed*, 737 N.W.2d at 589 (applying plain error analysis when a defendant did not object to the district court's reservation of its ruling).

The district court did not plainly err by reserving its ruling on whether Foster was entitled to call R.J. to allow the jury to observe his physical characteristics and his gait. Any alleged error by the district court was not plain. *State v. Ramey*, 721 N.W.2d 294, 302 (Minn. 2006) ("An error is plain if," at the time of the appeal, "it was clear or obvious," which requires that "the error contravenes case law, a rule, or a standard of conduct." (citations omitted) (internal quotation marks omitted)). There is no binding case law, rule, or standard of conduct establishing that a defendant is unconditionally entitled to compel an alternative perpetrator to appear for a nontestimonial purpose. It was reasonable for the district court to reserve its ruling to see how the trial unfolded and whether the State called the identification of R.J. into question.

Const. art. I, § 6 ("In all criminal prosecutions the accused shall enjoy the right . . . to have compulsory process for obtaining witnesses in his favor . . . ."); U.S. Const. amend. VI (applicable to the states through the Fourteenth Amendment as stated in *Washington v. Texas*, 388 U.S. 14, 18–19 (1967)); U.S. Const. amend. XIV;[7] *State v. Beecroft*, 813 N.W.2d 814, 838–39 (Minn. 2012) (recognizing the right to a complete defense under Article I, Section 7, of the Minnesota Constitution and the Fourteenth Amendment to the United States Constitution).

Though the right to compulsory process generally means that a defendant is permitted to call witnesses in support of their defense, "the constitutional protection of compulsory process is not an absolute guarantee that every witness a defendant seeks must testify." *Burrell v. State*, 858 N.W.2d 779, 786 (Minn. 2015). This is because the right is tempered by the operation of established rules of evidence and procedure. As we explained in *Burrell*, "to establish a violation of the . . . right to compulsory process, a defendant must at least make some plausible showing of how [the] testimony would have been both material and favorable to [their] defense." *Id.* (first alteration in original) (citation omitted) (internal quotation marks omitted).

Neither we nor the United States Supreme Court have had significant opportunities to define the contours of the right to compulsory process. *See Pennsylvania v. Ritchie*,

---

[7]     We have generally not distinguished between the rights to compulsory process in the Minnesota and United States Constitutions. *See Burrell v. State*, 858 N.W.2d 779, 786 (Minn. 2015). Because there is no binding federal case law applicable to the issue raised here, we have no occasion to determine whether the state and federal rights may differ in this context.

480 U.S. 39, 55 (1987). This is in part because claims involving the right to compulsory process are more often analyzed under the broader right to present a complete defense. *Id.* at 56; *see also* Peter Westen, *The Compulsory Process Clause*, 73 Mich. L. Rev. 71, 120 (1974) (opining that while the Supreme Court has made clear that it "recognizes a comprehensive right of the accused to present a defense through witnesses," it "vacillat[es] between compulsory process and due process as a ground for its decisions").

"The right of a defendant to present a complete defense . . . is guaranteed by the Due Process Clause of both the United States Constitution and the Minnesota Constitution."[8] *Beecroft*, 813 N.W.2d at 838–39 (citing U.S. Const. amend. XIV; Minn. Const. art. I, § 7). Like the right to compulsory process, the right to present a complete defense lacks a clear definition in both our case law and that of the United States Supreme Court. The right tends to be articulated in broad terms.[9] We have stated that the right to present a complete

---

[8]    We have generally not distinguished between the rights to present a complete defense under the Minnesota Constitution and the United States Constitution. *See Carbo*, 6 N.W.3d at 123 (describing the state and federal constitutional rights to present a complete defense as coextensive). As with the right to compulsory process, because there is no binding federal case law applicable to the issue raised here, we have no occasion to determine whether the state and federal rights may differ in this context.

[9]    *See, e.g., State v. Profit*, 591 N.W.2d 451, 463 (Minn. 1999) (stating that "[e]very criminal defendant has the right to be treated with fundamental fairness and afforded a meaningful opportunity to present a complete defense" (citation omitted) (internal quotation marks omitted)); *California v. Trombetta*, 467 U.S. 479, 485 (1984) (providing that "[u]nder the Due Process Clause of the Fourteenth Amendment, criminal prosecutions must comport with prevailing notions of fundamental fairness" and that the Court "ha[s] long interpreted this standard of fairness to require that criminal defendants be afforded a meaningful opportunity to present a complete defense"); *Holmes v. South Carolina*, 547 U.S. 319, 319 (2006) (restating that "the Constitution guarantees criminal defendants 'a meaningful opportunity to present a complete defense' " (quoting *Crane v. Kentucky*, 476 U.S. 683, 690 (1986))).

14

defense "is comprised, at a minimum, of the right to examine the witnesses against the defendant, to offer testimony, and to be represented by counsel." *State v. Reese*, 692 N.W.2d 736, 740 (Minn. 2005); *see also Beecroft*, 813 N.W.2d at 839 (stating that "[t]he right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, . . . [which is] to present the defendant's version of the facts . . . to the jury so it may decide where the truth lies" (second ellipses in original) (citation omitted) (internal quotation marks omitted)); *Chambers v. Mississippi*, 410 U.S. 284, 294, 302 (1973) (declaring that "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense" and providing that "[t]he rights to confront and cross-examine witnesses and to call witnesses in one's own behalf have long been recognized as essential to due process"). And although we need not conclusively define every contour of the right to present a complete defense in this case, we reiterate that the right is grounded in principles of "fundamental fairness" and includes the "right to present evidence." *State v. Richards*, 495 N.W.2d 187, 191 (Minn. 1992) (citing *California v. Trombetta*, 467 U.S. 479, 485 (1984)); *State v. Swaney*, 787 N.W.2d 541, 556 (Minn. 2010).

But, as with the right to compulsory process, the right to present a complete defense "is not absolute." *State v. Carbo*, 6 N.W.3d 114, 123 (Minn. 2024) (citation omitted) (internal quotation marks omitted). At times, the right to present a complete defense may "bow to accommodate other legitimate interests in the criminal trial process." *United States v. Scheffer*, 523 U.S. 303, 308 (1998) (citation omitted) (internal quotation marks omitted). The right "yields to the application of an evidentiary rule unless the rule

'infringe[s] upon a weighty interest of the accused and [is] arbitrary or disproportionate to the purposes [the rule is] designed to serve.' " *State v. Pass*, 832 N.W.2d 836, 841–42 (Minn. 2013) (alterations in original) (quoting *Holmes v. South Carolina*, 547 U.S. 319, 324–25 (2006)); *see also Richards*, 495 N.W.2d at 195 (explaining that in exercising the right to present a defense, a defendant must still " 'comply with established rules of procedure and evidence designed to assure both fairness and reliability in the ascertainment of guilt and innocence' " (quoting *Chambers*, 410 U.S. at 302)). The right to present a complete defense is subject to rules of evidence designed to exclude "unfairly prejudicial, confusing, or misleading evidence." *Pass*, 832 N.W.2d at 841–42. To that end, Minnesota Rules of Evidence 402 and 403 are "unquestionably constitutional" in the context of a due process challenge. *Id.* (citation omitted) (internal quotation marks omitted) (concerning Rule 403); *Loving v. State*, 891 N.W.2d 638, 646 n.1 (Minn. 2017) (concerning Rule 402); *see also Holmes*, 547 U.S. at 326–27.

The Minnesota Constitution and the United States Constitution also provide that "[n]o person shall . . . be compelled in any criminal case to be a witness against himself." Minn. Const. art. I, § 7; U.S. Const. amend. V (applicable to the states through the Fourteenth Amendment as stated in *Malloy v. Hogan*, 378 U.S. 1, 6 (1964)); U.S. Const. amend. XIV. This constitutional right "applies only 'when the accused is compelled to make a *testimonial* communication that is incriminating.' " *State v. Heinonen*, 909 N.W.2d 584, 589 (Minn. 2018) (alteration in original) (quoting *Fisher v. United States*, 425 U.S. 391, 408 (1976)). Although "a witness who desires the protection of the privilege [against self-incrimination] . . . must claim it at the time he relies on it," *Salinas v. Texas*, 570 U.S.

178, 183 (2013) (citation omitted) (internal quotation marks omitted), we have never decided whether a district court must require a witness to take the stand to invoke their right against self-incrimination.[10]

With these three key constitutional rights in mind, we address the State's contention that, as a matter of law, Foster could not call R.J. to the witness stand in the presence of the jury because Foster knew of R.J.'s intent to invoke his right against self-incrimination. We review the district court's evidentiary ruling for an abuse of discretion "even when a defendant alleges that his constitutional rights were violated." *State v. Profit*, 591 N.W.2d 451, 463 (Minn. 1999). "A district court abuses its discretion when its decision is based on an erroneous view of the law or is against logic and the facts in the record." *State v. Hallmark*, 927 N.W.2d 281, 291 (Minn. 2019) (citation omitted) (internal quotation marks omitted); *see, e.g.*, *State v. Obeta*, 796 N.W.2d 282, 294 (Minn. 2011) (concluding that the district court abused its discretion by erroneously determining that certain testimony was inadmissible as a matter of law when the district court had discretion to admit the testimony). We review questions of constitutional law de novo. *Beecroft*, 813 N.W.2d at 836.

---

[10] The United States Supreme Court also has not ruled on this question. *See State v. Herbert*, 767 S.E.2d 471, 480 (W. Va. 2014) (considering whether the district court must require a non-party witness to invoke the right against self-incrimination in the jury's presence and noting "that the United States Supreme Court has not ruled on this issue, meaning that the states have discretion on how to approach this issue under the federal Fifth Amendment and respective state constitutions").

A.

We turn first to the parties' dispute about the precedent we set in *State v. Moose*, 266 N.W.2d 521. We interpret our own case law de novo. *State v. Oberton*, 10 N.W.3d 64, 72 (Minn. 2024).

The State contends, as the court of appeals concluded, that *Moose* created a categorical rule that a defendant may never call a witness to the stand if the defendant knows that the witness has invoked or intends to invoke the right against self-incrimination. The State and the court of appeals primarily rely on the following statement in *Moose*: "Our analysis begins from the well-settled rule that a valid claim of the privilege against self-incrimination under the Fifth Amendment takes precedence over the Sixth Amendment right to compulsory process." 266 N.W.2d at 525. Foster argues that the court of appeals overextended *Moose*. We agree.

*Moose* did not create a categorical rule prohibiting a defendant from calling a witness when that witness has invoked or intends to invoke the right against self-incrimination. Our statement in *Moose* was made in the context of a dispute about whether an attorney has an ethical obligation to call a witness who has invoked or will invoke the right against self-incrimination.[11] *See id.* at 524–25. The question here is

---

[11] We also note that *Moose* cited the American Bar Association (ABA) Standards for Criminal Justice, which stated that it is unethical to call a trial witness when it is known that the witness will assert their right against self-incrimination. *See* Standards Relating to the Defense Function § 7.6(c) (Am. Bar Ass'n 1971) ("It is unprofessional conduct for a lawyer to call a witness who he knows will claim a valid privilege not to testify, for the purpose of impressing upon the jury the fact of the claim of privilege."). The State relied on this standard in arguing that defense counsel's decision not to call the alternative

different. And of the cases that we cited in support of the statement in *Moose*, only one—*State v. Spencer*—is binding on this court, and it addressed an entirely different issue than the one we face here. *See State v. Spencer*, 248 N.W.2d 915, 919 (Minn. 1976) (addressing whether "[a] witness'[s] refusal to answer otherwise permissible questions on Fifth Amendment grounds . . . violate[d] [the] defendant's Sixth Amendment right to cross-examine"). We have not said that a defendant cannot, as a matter of law, call to the stand a witness who intends to invoke their right again self-incrimination.

Our statement in *Moose* stands for a more limited, but important, proposition: A defendant's assertion of the right to compulsory process does not trump a witness's right against self-incrimination such that the defendant can compel a right-invoking witness to give incriminating testimony. This interpretation of *Moose* is supported by our decision in *State v. Graham*, in which we cited *Moose* for the principle that "[a] defendant's constitutional right to present a defense . . . does not permit a defendant to compel a prospective witness to waive her Fifth Amendment privilege against self-incrimination." 764 N.W.2d 340, 349 (Minn. 2009) (citing *Moose*, 266 N.W.2d at 525). Here, although the analysis in *Moose* undoubtedly prevents Foster from forcing R.J. to provide incriminating answers, it does not categorically foreclose Foster's request to call R.J. to the witness stand.

---

perpetrator as a trial witness was proper. The ABA standard has since been amended. Although the amended standard discourages calling a witness under these circumstances, it no longer expressly prohibits doing so. *See* Criminal Justice Standards for the Defense Function § 4-7.7(c) (Am. Bar Ass'n, 4th ed. 2017) ("Defense counsel should not call a witness in the presence of the jury when counsel knows the witness will claim a valid privilege not to testify.").

B.

Because *Moose* does not categorically prohibit a defendant from calling a witness who has invoked or intends to invoke the right against self-incrimination, we must next address the unsettled question of whether a defendant may call an alternative perpetrator to the witness stand when it is known that the alternative perpetrator will invoke their right against self-incrimination. We must view this question through the lens of a defendant's rights to compulsory process and to present a complete defense.

The State argues that an invocation of the right against self-incrimination does not have probative value, and defendants (like prosecutors) should therefore not be allowed to call a trial witness who will do nothing more than invoke the right. To support its assertion, the State relies on *State v. Mitchell*, in which we stated that "the answer of the witness that he refused to answer on the ground that his answers might tend to incriminate him . . . of course was no evidence at all."[12] 130 N.W.2d 128, 133 (Minn. 1964) (citation omitted) (internal quotation marks omitted).

---

[12] The State also cites *State v. Morales*, 788 N.W.2d 737, 757 (Minn. 2010), as well as a federal case not binding on this court, for the assertion that the invocation of the right against self-incrimination can never have probative value. *See United States v. Maloney*, 262 F.2d 535, 537 (2d Cir. 1959). But the reasoning in these cases, and many others not cited by the State, rests not on a categorical assertion that an invocation can never have probative value but rather on the risk of prejudicial inferences by juries. *See Morales*, 788 N.W.2d at 756–57; *Maloney*, 262 F.2d at 537; *see also Bowles v. United States*, 439 F.2d 536, 541–42 (D.C. Cir. 1970) ("[A] witness should not be put on the stand for the purpose of having him exercise his privilege before the jury. This would only invite the jury to make an improper inference."); *People v. Myers*, 220 N.E.2d 297, 311 (Ill. 1966) ("While an examination of such a witness adds little material evidence, it operates to prejudice the defendant in the eyes of the jury."); *State v. Berry*, 324 So.2d 822, 830 (La. 1975) ("[C]laims of privilege are preferably determined outside the presence of the

When read broadly, the language from *Mitchell* provides some support for the State's position, but *Mitchell* applies only to a *prosecutor* seeking to call a witness whom the prosecutor knows will invoke the right against self-incrimination. *See id.* at 129–31. In *Mitchell*, we focused on "conduct [that] tends to undermine the integrity of the judicial process and vitiates . . . conviction[s]" when we established the rule that "where the prosecution calls a witness for the purpose of prejudicing the defendant in the minds of the jury, knowing that the witness will claim immunity, reversible error results[,] . . . even [when] it cannot be established that prejudice results."[13] *Id.* at 131. As explained below, we decline to extend the holding in *Mitchell* to the circumstances presented here, because prosecutors and defendants are not similarly situated in at least two critical ways and

jury, since undue weight may be given by a jury to the claim of privilege and due to the impossibility of cross-examination as to its assertion."); *State v. Nunez*, 506 A.2d 1295, 1298–99 (N.J. Super. Ct. App. Div. 1986) ("[T]he jury is not entitled to draw any inference from the decision of a witness to exercise his constitutional privilege whether those inferences be favorable to the prosecution or the defense." (citation omitted) (internal quotation marks omitted)); *Commonwealth v. Greene*, 285 A.2d 865, 867 (Pa. 1971) ("Reviewing the principle that the jury may not draw any inference from a [witness's] exercise of his constitutional rights . . . , the court applied the corollary to this rule that a witness should not be placed on the stand for the purpose of having him exercise his privilege before the jury. We are in agreement . . . ."); *State v. Hughes*, 493 S.E.2d 821, 823–24 (S.C. 1997) ("Here, defense counsel knew [the witness] would invoke his privilege against self-incrimination and sought to put him on the stand solely to allow the jury to draw adverse inferences from his refusal to testify. We concur . . . that such an inference is impermissible.").

[13]    If the State calls a witness in good faith, and the witness invokes their right against self-incrimination, the reviewing court must engage in a factual inquiry, asking "whether, in content and extent, the prosecutor's examination is of a type that has prejudiced defendant to the extent that he has been denied a fair trial." *Mitchell*, 130 N.W.2d at 131; *see Morales*, 788 N.W.2d at 753–55 (providing factors for distinguishing between good and bad faith).

because we are unconvinced that calling an alternative perpetrator to the witness stand can never have probative value.

First, the *Mitchell* framework aims to address the concern that calling a witness to the stand for the sole purpose of eliciting an invocation of the right against self-incrimination may invite the jury to make improper inferences *about the defendant's guilt*. For example, if a co-defendant witness invokes the right on the stand, the jury may infer that the co-defendant has something to hide and impute that perceived culpability to the defendant. An inference of this kind could undermine the integrity of the judicial process and vitiate the conviction. *See id.* at 130–31; *see also Namet v. United States*, 373 U.S. 179, 185–88 (1963) (summarizing the policy concerns underlying similar approaches in other jurisdictions). Such inferences are *inculpatory* and are therefore distinct from the potential *exculpatory* effects of a *defendant* calling a witness to the stand who will invoke the right against self-incrimination. *See Rios-Vargas v. People*, 532 P.3d 1206, 1215 (Colo. 2023); *Gray v. State*, 796 A.2d 697, 713–14 (Md. 2002); *Bowles v. United States*, 439 F.2d 536, 545 n.11 (D.C. Cir. 1970) (Bazelon, C.J., dissenting).

Second, the State's unique ability to confront a right-invoking witness also supports affording more leeway to defendants. If a prosecutor calls a witness, and that witness invokes their right against self-incrimination, the defendant has no opportunity to cross-examine that witness to mitigate any improper inferences the jury may have made based on the invocation. In contrast, if a defendant calls a witness and that witness invokes the right, the prosecution may seek an order compelling the witness to testify, and if the order is granted, the witness receives what is known as "use immunity." *See* Minn. Stat.

§ 609.09 (2024) (referred to as the "use-immunity statute"); *Bolstad v. State*, 878 N.W.2d 493, 495 n.1 (Minn. 2016) (explaining procedures under the use-immunity statute); *State v. Morales*, 788 N.W.2d 737, 751 (Minn. 2010) (concluding that the immunity granted under the use-immunity statute is coextensive with the Fifth Amendment right against self-incrimination).

With the constitutional prerogative of fundamental fairness in mind, these two distinctions between prosecutors and defendants matter when evaluating the value of an invocation to the jury. This is especially true when we consider that a defendant has a constitutionally guaranteed right to present a complete defense, while the State has no equivalent right to present a complete offense.

Our constitutional concerns only grow when we consider the potential probative value of the evidence here. We have never held that an alternative perpetrator's invocation of their right against self-incrimination lacks probative value as a matter of law. Evidence has probative value if it has "*any* tendency to make the existence of *any fact* that is of consequence . . . more probable or less probable than it would be without the evidence." Minn. R. Evid. 401 (emphasis added). Framed differently, we have said that evidence has probative value "if, when taken alone *or in connection [with] other facts*, [the evidence] warrants a jury in drawing a logical inference assisting, *even though remotely*, the determination of the issue in question." *State v. Schulz*, 691 N.W.2d 474, 478 (Minn. 2005) (emphasis added). We cannot say with categorical certainty that an alternative perpetrator's invocation of the right against self-incrimination, when taken in connection with other evidence, can never support a logical inference by a jury as to the defendant's

guilt or any other determination in question—especially given the threshold *Hawkins* requirement that there be evidence connecting the alternative perpetrator to the crime.[14] We therefore conclude that an invocation of the right against self-incrimination by an alternative perpetrator can have probative value.

Given our conclusion that an alternative perpetrator's invocation of the right against self-incrimination can have probative value in some instances, we would offend constitutional principles by categorically prohibiting a defendant from calling a right-invoking alternative perpetrator to the witness stand.

To start, a categorical prohibition would offend the constitutional right to present a complete defense. Such a prohibition would arbitrarily preclude defendants raising an alternative perpetrator defense from presenting defense evidence, through the act of calling a trial witness who intends to invoke the right against compelled self-incrimination, that may be probative and admissible under the Minnesota Rules of Evidence. The due process "right to present a complete defense includes the right to present evidence," subject to evidentiary rules. *Swaney*, 787 N.W.2d at 556; *Pass*, 832 N.W.2d at 841–42. But an evidentiary rule that limits the right to present defense evidence is unconstitutional if it

---

[14] *See Rios-Vargas*, 532 P.3d at 1216 (implicitly identifying the probative value of an invocation of the right against self-incrimination in stating that a defendant raising an alternative perpetrator defense "can suffer prejudice if the jury is prevented from seeing" the alternative perpetrator, which presupposes that the mere act of the alternative perpetrator taking the stand can lead to inferences by the jury about the defendant's guilt); *see also Herbert*, 767 S.E.2d at 481; *Gray*, 796 A.2d at 715 ("[W]e disagree with the courts that take the sweeping view that there can never be probative value to a witness's assertion of the privilege [against self-incrimination] in a criminal case . . . ." (citation omitted) (internal quotation marks omitted)).

" 'serve[s] no legitimate purpose or [is] disproportionate to the ends [it is] asserted to promote.' " *Pass*, 832 N.W.2d at 842 (quoting *Holmes*, 547 U.S. at 326).

The only identifiable purpose for adopting a categorical prohibition would be to exclude "unfairly prejudicial, confusing, or misleading evidence." *Id.* But because Rules 402 and 403 of the Minnesota Rules of Evidence already serve that purpose, a categorical prohibition would be an undue additional restriction on the right to present a complete defense in violation of the Due Process Clauses of the United States and Minnesota Constitutions. *See Pass*, 832 N.W.2d at 841–42 (citing *Holmes*, 547 U.S. at 326–27).

And a categorical prohibition would also run afoul of the principle of fundamental fairness that underlies the right to present a complete defense. Such a rule would ignore consequential risks unique to defendants in alternative perpetrator cases. A defendant who raises an alternative perpetrator defense "can suffer prejudice if the jury is prevented from seeing" the alternative perpetrator. *Rios-Vargas*, 532 P.3d at 1216. Excluding the alternative perpetrator " 'from the jury's presence may cause jurors to unfairly assume that the defense was frivolous or insincere because they did not see the witness be questioned.' " *Id.* (quoting *State v. Herbert*, 767 S.E.2d 471, 481 (W. Va. 2014)). The jury may also "conclude that the defendant 'chose[] not to ask [the alternate suspect] any questions about the [crime] out of a lack of confidence in his defense.' " *Id.* (alterations in original) (quoting *Gray*, 796 A.2d at 708).

For the foregoing reasons, we reject a categorical rule prohibiting a defendant from calling to the witness stand an alternative perpetrator who intends to invoke the right,

because such a rule would infringe on the rights to compulsory process and to present a complete defense protected by the United States and Minnesota Constitutions. By rejecting a categorical prohibition, we join many other courts. *See, e.g.*, *Gray*, 796 A.2d at 715; *Rios-Vargas*, 532 P.3d at 1216; *Herbert*, 767 S.E.2d at 482–83; *State v. McDaniel*, 665 P.2d 70, 76 (Ariz. 1983); *People v. Thomas*, 415 N.E.2d 931, 934 (N.Y. 1980).

We emphasize that, in rejecting a categorical prohibition, we do not infringe on any constitutional right of the alternative perpetrator because "an assertion of the privilege [against self-incrimination] poses no prejudice to" an alternative perpetrator. *Rios-Vargas*, 532 P.3d at 1216. Even if an alternative perpetrator were to invoke the right against self-incrimination on the witness stand, that invocation could not be used against them in a future prosecution. *Id.* (citing *Griffin v. California*, 380 U.S. 609, 615 (1965)). In other words, in a case like this one, it is only the *defendant* whose rights and liberty interest are at stake and must be protected. *See id.*

Because we decline to adopt a categorical prohibition, we must next address the circumstances in which a defendant may call an alternative perpetrator to the witness stand. One option would be to impose a categorical rule in the other direction, which would mean that a defendant would *always* be entitled to call an alternative perpetrator who will invoke the right against self-incrimination on the stand. Although some courts have adopted such a rule, *see, e.g.*, *Rios-Vargas*, 532 P.3d at 1216–17; *Herbert*, 767 S.E.2d at 479, we decline to do so. Depriving the district courts of discretion could invite abuse. *See Herbert*, 767 S.E.2d at 498–99 (Loughry, J., concurring) (explaining the many pitfalls of an "express foreclosure of any discretion to trial courts" and noting, for example, that such a rule would

26

"grant[] prosecutors and defense counsel carte blanche to badger witnesses by repeatedly asking questions designed to elicit the invocation of the Fifth Amendment privilege"). Instead, we hold that the district court must have discretion to admit this type of evidence under the ordinary rules of evidence.[15]

The district court's decision to allow an alternative perpetrator's invocation of their right against self-incrimination on the witness stand must be a case-specific inquiry guided by the Minnesota Rules of Evidence. *See, e.g.*, Minn. R. Evid. 403 ("[E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."); *see also Gray*, 796 A.2d at 715 ("The question is not whether a witness's assertion of the privilege is devoid of evidentiary value," but instead whether "a trier of fact in a criminal case should be *permitted* to give that act evidentiary value and, if so, under what circumstances." (emphasis added) (citation omitted) (internal quotation marks omitted)).

The district court's discretion in this context is not without guardrails. To the contrary, three important principles help guide the exercise of this discretion:

First, our holding is limited to defendants who, like Foster, have satisfied the threshold "*Hawkins* test" for raising an alternative perpetrator defense. *See Hawkins*, 260 N.W.2d at 158–59. The first prong of the *Hawkins* test, which requires that the defendant put forth "evidence having an inherent tendency to connect such other person

---

[15] Maryland's highest court adopted a similar approach in *Gray*, 796 A.2d at 714–16. We note, however, that the holding in *Gray* was not limited to alternative perpetrator cases as ours is. *Id.* at 714.

27

with the actual commission of the crime," prevents defendants from calling witnesses with no connection to the case. *Id.* at 159 (citation omitted) (internal quotation marks omitted). This guardrail addresses the concern raised by some courts that, under an overly permissive approach, a "defendant could subpoena any known person of disrepute and force him or her to take the Fifth." *State v. Heard*, 934 N.W.2d 433, 444 (Iowa 2019) (internal quotation marks omitted).

Second, the district court must still apply the ordinary rules of evidence, including Minnesota Rules of Evidence 402 and 403. *See* Minn. R. Evid. 402 (providing that only relevant evidence is admissible and that relevant evidence may be excluded by other rules or laws); Minn. R. Evid. 403 ("[E]vidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."). The district court remains free to prevent an alternative perpetrator from taking the stand to invoke the right against self-incrimination based on the rules of evidence, including weighing the probative value against the risk of unfair prejudice to the State. *See* Minn. R. Evid. 403. This comports both with a defendant's constitutional rights to compulsory process and to present a complete defense *and* with our longstanding precedent holding that those rights are tempered by the ordinary rules of evidence. *See Richards*, 495 N.W.2d at 195; *Pass*, 832 N.W.2d at 841–42.

Third, we emphasize that our holding here does not upset our holding in *Moose*. A party's assertion of the right to compulsory process (or to present a complete defense) does not trump a witness's right against self-incrimination such that the party can compel a

right-invoking witness to give incriminating testimony. *See Moose*, 266 N.W.2d at 525; *Graham*, 764 N.W.2d at 349 (citing *Moose*, 266 N.W.2d at 525). Alternative perpetrators remain entitled to invoke their right against self-incrimination on the witness stand.

In sum, we hold as follows: When a defendant has satisfied the required test to present an alternative perpetrator defense, the district court may exercise its discretion to allow the defendant to call the alternative perpetrator as a trial witness, even when it is known that the alternative perpetrator will invoke the right against self-incrimination; in exercising its discretion, the district court must determine whether the alternative perpetrator's invocation of the right against self-incrimination comports with the ordinary rules of evidence.

### III.

Having clarified the law, we next apply our holding to Foster's case to determine whether the district court abused its discretion by denying Foster's request to call R.J. as a trial witness when the parties knew that R.J. would invoke the right against self-incrimination. We conclude that the district court did not abuse its discretion.

When it denied Foster's request to call R.J. as a trial witness, the district court provided two independent bases for excluding the evidence under Minnesota Rule of Evidence 403. First, after acknowledging a lack of clarity in the law, the court concluded that an invocation of the right against self-incrimination lacks probative value. Second, the district court reasoned that—even if R.J.'s invocation of the right in the presence of the jury had probative value—the presentation of the evidence in this particular case would be needlessly cumulative.

29

The parties' arguments focus on the district court's first basis—an invocation of the right against self-incrimination in the presence of the jury lacks probative value as a matter of law. As we note above, there is no per se rule that such testimony lacks probative value. Consequently, the court of appeals erred when it affirmed the district court's decision on that basis.

But this conclusion does not end our analysis. Although the parties did not focus on the district court's second basis for excluding R.J.'s testimony, we must "decide cases in accordance with law" even when parties do not raise a particular issue, so long as that issue is not "novel or questionable." *State v. Hannuksela*, 452 N.W.2d 668, 673 n.7 (Minn. 1990) (addressing an issue that neither party raised in its briefing or at oral argument); *see also State v. Vasko*, 889 N.W.2d 551, 555–56 (Minn. 2017) (affirming the court of appeals' interpretation of a statute despite neither party raising the issue of ambiguity before the court of appeals); *State v. Beganovic*, 991 N.W.2d 638, 643–47 (Minn. 2023) (interpreting a term differently from the parties' agreed meaning). As noted above, faced with the circumstances presented in this case, a district court should apply the ordinary rules of evidence, and there is nothing novel or questionable about the application of the ordinary rules of evidence here.

Rule 403 of the Minnesota Rules of Evidence provides that "relevant[] evidence may be excluded if its probative value is substantially outweighed . . . by considerations of . . . needless presentation of cumulative evidence." Rulings concerning the admissibility of evidence under Rule 403 are within the discretion of the district court and are reversed only for a clear abuse of that discretion. *Schulz*, 691 N.W.2d at 477. A

30

district court abuses its discretion when its decision is "against logic and the facts in the record." *See Hallmark*, 927 N.W.2d at 291 (citation omitted) (internal quotation marks omitted). "We afford the district court broad discretion when ruling on evidentiary matters," *Doe 136 v. Liebsch*, 872 N.W.2d 875, 879 (Minn. 2015), and we "will not lightly overturn a trial court's evidentiary ruling." *State v. Robertson*, 884 N.W.2d 864, 872 (Minn. 2016) (citation omitted) (internal quotation marks omitted). In accordance with Rule 403 and the applicable standard of review, we routinely affirm the exclusion of evidence on the ground that it would involve needless presentation of cumulative evidence.[16]

Here, the district court denied Foster's request to call R.J. as a trial witness on the alternative ground that R.J.'s invocation of the right against self-incrimination would be needlessly cumulative. It reasoned, "[I]n this case, all the things that you listed off that you were going to rely on to make the argument that [R.J.] was the actual perpetrator, they're still there." In support of his motion to raise an alternative perpetrator defense, Foster had submitted a list of evidence that he planned to introduce to show that R.J. murdered Bradley. The list included evidence of R.J.'s criminal history and photos of R.J. from government records. It also included Foster's own eyewitness testimony. According

---

[16] For example, in *State v. Martin*, 614 N.W.2d 214, 225 (Minn. 2000), we held that the district court did not abuse its discretion when it excluded additional impeachment testimony when the defendant presented extrinsic evidence of a phone call that impeached the witness in question. And in *State v. Zumberge*, 888 N.W.2d 688, 695–97 (Minn. 2017), we held that the district court did not abuse its discretion when it excluded testimony regarding the victim's threatening behavior, character, and previous possession of a gun because the excluded evidence covered the same ground as other evidence admitted at trial.

31

to Foster, he planned to testify that he knew R.J., that R.J. had been dealing drugs out of Bradley's home around the date of the murder, that R.J. gave Foster crack cocaine in exchange for rides on the weekend of the murder, that Foster witnessed R.J. violently attack Bradley at the scene of the murder, that R.J. also attacked Foster, and that Foster escaped the attack while R.J. and Bradley remained in the home.[17]  Given this list of other evidence, it was within the district court's considerable discretion to balance the probative value of an invocation by R.J. against its cumulativeness.  And based on our review of the evidence and our deferential standard of review, we cannot say that the second, independent basis for the district court's denial of Foster's request to call R.J. as a trial witness was "against logic and the facts in the record."  *Hallmark*, 927 N.W.2d at 291 (citation omitted) (internal quotation marks omitted).  The district court did not clearly abuse its discretion when it denied Foster's request.

## CONCLUSION

For the foregoing reasons, we affirm the decision of the court of appeals on other grounds.

Affirmed.

---

[17]  Although it is not relevant to the district court's pretrial determination, we note that, at trial, Foster also presented security camera footage featuring a man Foster identified as R.J. entering and leaving Bradley's home several times on the day of Bradley's murder.

CONCURRENCE

GAÏTAS, Justice (concurring).

I agree with the court's determination in section I that Foster forfeited the argument that the district court abused its discretion by not granting his request to call R.J. as a witness for a nontestimonial purpose. Additionally, I agree with the court's holding in section II that a district court has discretion to allow a defendant to call an alternative perpetrator as a trial witness even when it is known that the alternative perpetrator will invoke the privilege against self-incrimination. I write separately, however, because I disagree with the court's decision to affirm on a basis that the State never raised—that allowing Foster to call R.J. as a trial witness would have resulted in needlessly cumulative evidence.

Under the principle of party presentation, an appellate court should not decide a case based on an issue that was not raised or briefed by the parties. *Greenlaw v. United States*, 554 U.S. 237, 244 (2008). This principle is fundamental to our adversarial system of justice. *See Nat'l Aeronautics & Space Admin. v. Nelson*, 562 U.S. 134, 147 n.10 (2011) ("The premise of our adversarial system is that appellate courts do not sit as self-directed boards of legal inquiry and research, but essentially as arbiters of legal questions presented and argued by the parties before them." (citation omitted) (internal quotation marks omitted)). In our adversarial system, "we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present." *Greenlaw*, 554 U.S. at 243. Although an appellate court may affirm a judgment on any ground, that ground must be raised by a party to the case. *See Leuthard v. Indep. Sch. Dist.*

C-1

*912 – Milaca*, 958 N.W.2d 640, 650 (Minn. 2021) (reversing Workers' Compensation Court of Appeals because it relied on a claim not raised on appeal to reverse compensation judge's decision); *State v. Vang*, 847 N.W.2d 248, 259 n.4 (Minn. 2014) ("Because appellant does not challenge the sufficiency of the evidence that appellant was in or had just exited a motor vehicle, we do not address that issue."); *State v. Swaney*, 787 N.W.2d 541, 551 n.4 (Minn. 2010) (noting that, because the parties did not raise an issue, the issue was not before the court); *State v. Edrozo*, 578 N.W.2d 719, 722 n.4 (Minn. 1998) (declining to address an issue discussed by the court of appeals because neither party raised it before the supreme court); *Johnson v. Dirkswager*, 315 N.W.2d 215, 219 (Minn. 1982) (electing not to base the court's decision on an issue that appellants did not raise or brief).

On occasion, there may be tension between the party presentation principle and our obligation to decide cases in accordance with the law. *See State v. Hannuksela*, 452 N.W.2d 668, 673 n.7 (Minn. 2014) (observing that this court has a duty to decide cases in accordance with the law); *see also* Minn. R. Civ. App. P. 103.04 (stating that an appellate court may "take any . . . action as the interest of justice may require"); Minn. R. Crim. P. 28.02, subd. 11 ("On appeal from a judgment, the court may review . . . any other matter, as the interests of justice may require."). "To the extent courts have approved departures from the party presentation principle in criminal cases, the justification has usually been to protect a [self-represented] litigant's rights." *Greenlaw*, 554 U.S. at 243–44.

"[A]s a general rule, our system 'is designed around the premise that [parties represented by competent counsel] know what is best for them, and are responsible for advancing the facts and argument entitling them to relief.'" *United States v.*

*Sineneng-Smith*, 590 U.S. 371, 375–76 (2020) (quoting *Castro v. United States*, 540 U.S. 375, 386 (2003) (Scalia, J., concurring in part and concurring in judgment)) (second alteration in original). When we decide a case on a basis that has not been raised by a party, we tread dangerously close to functioning not as a neutral arbiter, but as an advocate for one party or another. *See State v. Malone*, 963 N.W.2d 453, 464 (Minn. 2021) ("A judge must not act as counsel for a party to the litigation.").

Here, the court affirms the court of appeals' decision—and Foster's conviction—on a ground that the State never presented to the district court, the court of appeals, or this court. Picking up on the district court's *sua sponte* backup rationale for denying Foster's motion to call R.J. as a witness, the court concludes that calling R.J. to the stand would have resulted in needlessly cumulative evidence.

As noted, the State did not present this argument in the district court. Instead, the State vigorously argued that a defendant should never be allowed to call a witness who intends to invoke the privilege against self-incrimination. Moreover, on appeal, the State has never defended the district court's ruling on the alternative ground that calling R.J. to the stand would have resulted in needlessly cumulative evidence. Before the court of appeals and this court, the State has consistently argued that the law prohibits calling a witness who intends to invoke the privilege against self-incrimination, and alternatively, that any error in excluding the evidence was harmless beyond a reasonable doubt. Because the State never raised the cumulative-evidence argument, it was not developed in the district court or on appeal. More importantly, Foster has never had an opportunity to respond to this argument.

Because the cumulative-evidence argument was never presented, and Foster never had an opportunity to address it, we should not raise it and rely on it as a basis to affirm. Doing so violates the party presentation principle, and there is no justification for departing from this principle here.

Nonetheless, I agree with the court's ultimate decision to affirm. I would affirm based on an argument that the State *did* present on appeal—harmless error. Even if the district court abused its discretion by denying Foster's request to call R.J. as a trial witness, in my view, any error was harmless beyond a reasonable doubt. When a district court's evidentiary error amounts to a constitutional error, such as denying a defendant the right to present a complete defense, we must consider whether the exclusion of the evidence was harmless beyond a reasonable doubt. *State v. Carbo*, 6 N.W.3d 114, 123 (Minn. 2024). An error is harmless beyond a reasonable doubt when the reviewing court is satisfied beyond a reasonable doubt that, "[i]f the evidence had been admitted and the damaging potential of the evidence fully realized, . . . a reasonable jury[] would have reached the same verdict." *State v. Post*, 512 N.W.2d 99, 102 (Minn. 1994) (footnote omitted).

If the district court had allowed Foster to call R.J. as a trial witness, the damaging potential of this evidence would have been minimal. The record shows that R.J. would have immediately invoked the privilege against self-incrimination. Based on R.J.'s invocation, the district court would have instructed the jury that it could not draw any improper inferences from R.J.'s decision not to testify. R.J.'s appearance at trial may have provided some additional evidence that R.J. was a real person. But the jury already had evidence showing that this was the case, including photos of R.J. and video of R.J. at the

scene of the murder. Thus, calling R.J. to the stand would not have meaningfully advanced Foster's trial theory that R.J. killed Bradley.

In arguing that he was prejudiced by his inability to call R.J. as a witness, Foster points to the State's closing argument. He contends that calling R.J. to the stand would have allowed him to refute the prosecutor's comments that his defense was a "story," a "concocti[on]," and a "fabrication." However, the prosecutor's closing argument did not question whether R.J. was a real person or whether R.J. was the man visible in the security camera footage. Rather, the prosecutor's remarks challenged Foster's claim that he did not kill Bradley. Calling R.J. to the stand would not have addressed the prosecutor's argument that there was overwhelming evidence that Foster was the person who killed Bradley.

Indeed, the evidence that Foster killed Bradley was substantial. That evidence included Foster's DNA evidence at the murder scene, Foster's flight from the scene, Bradley's blood in Foster's abandoned truck, and injuries to Foster's hands, legs, and shoulder. Given the strength of the State's case, and the minimal probative value of calling R.J. to the stand, I conclude that any error in the district court's exclusion of this evidence was harmless beyond a reasonable doubt.

For these reasons, I agree with the court's decision to affirm the decision of the court of appeals. But I do not join section III of the majority's decision.


HUDSON, Chief Justice (concurring).

I join in the concurrence of Justice Gaïtas.